UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:26-cv-21113-KMM-MFE

ROBERT GULLEY, on behalf of himself and all others similarly situated,

Plaintiff,

v.

EETHO BRANDS INC, d/b/a DOSE,

Defendant.
_______________________________________/

**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND/OR DISMISS**

Defendant Eetho Brands Inc. d/b/a Dose ("**Dose**" or "**Defendant**") move to dismiss the putative Class Action Complaint (ECF No.1; "**Complaint**") filed by Plaintiff Robert Gulley (**"Plaintiff"**). Plaintiff must be compelled to arbitrate his claims in accordance with a valid and enforceable arbitration agreement between the parties. Alternatively, the Complaint should be dismissed because Plaintiff fails to a claim under the Electronic Communication Privacy Act, 18 U.S.C. § 2520(a), the Florida Security of Communications Act, Section, Section 934.10, Florida Statutes, or for common law invasion of privacy, fraud, deceit, misrepresentation, or unjust enrichment. Finally, upon the appropriate dismissal of the ECPA claim, the Complaint fails to demonstrate that the Court's subject matter jurisdiction has been properly invoked pursuant to either 28 U.S.C. §§ 1332(a) or (d).

## I. INTRODUCTION

Plaintiff is the latest in an exploding number of litigants who have sought to fit a square peg into a round hole by futilely attempting to apply eavesdropping and/or wiretapping statutes to

technologies and interactions to which the laws were neither intended nor designed to regulate. His Complaint must be dismissed for the following reasons:

First: Plaintiff's claims must be arbitrated. Plaintiff alleges that he justifiably relied upon certain representations contained in the Website's privacy policy (the "Privacy Policy"). Complaint ¶¶ 268-269. Acknowledging that he obtained actual notice of the Privacy Policy's terms and disclosures serves as an admission that he agreed to the Privacy Policy, including Section 9(b) thereof, which provides, *inter alia*, that "Any dispute over privacy between customer and Dose is subject to the provisions of this notice and to Dose's Terms and Conditions which is hereby incorporated herein and which can be read at https://dosedaily.co/pages/terms-and-conditions." *See Pizzitola Decl.*, Exhibit A. Those Terms and Conditions contain a mandatory arbitration agreement and corresponding class action waiver provision. Plaintiff's agreement to these provisions means that he has filed this case in the wrong forum, purports to represent a putative class despite agreeing that all disputes are to be litigated on an individual basis, and must be compelled to arbitrate the individual claims accordingly.

Second, any alleged interception of Plaintiff's communication with Dose's Website cannot give rise to a claim for relief against Dose for alleged violation of the Electronic Communication Protection Act, 8 U.S.C. §§ 2510–2522 ("ECPA") for two reasons. Initially, because it is a one-party consent statute, Dose was a party to the communication, and the crime-tort exception to the statute does not apply, Dose is not a liable party under the statute. However, even if it could be, the Complaint does not allege that the content of Plaintiff's alleged communication(s) was intercepted.

Third, Plaintiff fails to state a claim for relief pursuant to Florida Security of Communications Act, Section, Section 934.10, Florida Statutes. As a threshold matter, he lacks statutory standing to assert such a claim. The Complaint admits that Plaintiff is a resident of Minnesota and communicated with the Website while he was in Minnesota. Complaint ¶¶ 9,16. Florida courts are clear both in that

(a) either the person bringing a FSCA claim must be a Florida resident, or the allegedly improper interception must have occurred in Florida, *Cohen Bros, LLC v. ME Corp., S.A.*, 872 So.2d 321, 324 (Fla. 3d DCA 2004); and that (b) the place of interception is where the communication originated, not where it's heard or recorded. *State v. Mozo*, 655 So.2d 1115, 1117 (Fla. 1995). Moreover, the FSCA does not apply to technologies which track the movement of a person or object, which is exactly how the Complaint describes the alleged tracking technologies.

<u>Fourth</u>, Plaintiff fails to state a claim for relief on a theory of intrusion upon seclusion because under Florida law that tort only applies to intrusions into one's physical quarters. However, Plaintiff complaint is limited solely to a purported intrusion upon a private activity.

<u>Fifth</u>, Plaintiff fails to state a claim for relief on a theory of fraud, deceit, and/or misrepresentation because it fails to satisfy Rule 9(b)'s heightened pleading standards, its substantive allegations are flatly contracted by the terms of the Privacy Policy itself, and because it is barred by the economic loss rule.

<u>Sixth</u>, Plaintiff fails to state a claim for relief on a theory of unjust enrichment because, despite Florida law requirement that any alleged benefit be conferred by Plaintiff directly upon Defendant, the Complaint demonstrates that any alleged benefit was *indirectly* conferred on Defendant through third parties.

<u>Seventh</u>, upon the appropriate dismissal of Plaintiff's statutory claims, the remainder of the claims, both individual and class, must be dismissed for similar jurisdictional shortcomings. Plaintiff fails to sufficiently invoke the Court's jurisdiction pursuant to Class Action Fairness Act, 28 U.S.C. 1332(d)(2) ("CAFA"), having only asserted allegations that mirror the statutory requirements. Complaint. ¶ 18. The Complaint does not contain any allegations specifying the amount of damages which Plaintiff purportedly suffered, let alone provided a sufficient indication of how that amount could be aggregated such that it exceeded $5 million dollars. That failure dooms both the putative

class claims, which rely on CAFA jurisdiction, as well as Plaintiff's claims, which would necessitate diversity jurisdiction upon the appropriate dismissal of Counts I and II.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss, a pleasing "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A claim should only be considered facially plausible when "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. To satisfy the plausibility standard, Plaintiff must set forth "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "A formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must "include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Plaintiff's allegations must be well-founded, as a recitation of "[f]actual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). A plaintiff cannot merely parrot statutory language to plead a statutory cause of action without supporting facts (as Plaintiff does here) .

### B. Motion to Dismiss Under Rule 12(b)(1)

Challenges to subject matter jurisdiction are brought pursuant to Fed. R. Civ. P. 12(b)(1) and take one of two forms: a "facial attack" or a "factual attack." "A "facial attack" on the complaint require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for purposes of the motion." *McElmurray v. Consol. Gov't of August-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2017) (internal quotations omitted).

"[L]ower federal courts are empowered to hear only cases for which there has been a congressional grant of jurisdiction, and once a court determines that there has been no grant that covers a particular case, the court's sole remaining act is to dismiss the case for lack of jurisdiction." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000); *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

## III. THE PRIVACY POLICY AND TERMS AND CONDITIONS MANDATE ARBITRATION

The Complaint's allegations contain unambiguous admissions that Plaintiff obtained actual notice of the terms of the Website Privacy Policy, going as far as to allege that he relied upon certain disclosures contained therein when deciding to continue to use the Website instead of avoiding it. See Complaint ¶ 268-269. "Allegations in a complaint are considered judicial admissions." *Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008) *see also Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) (district court's conclusion that statements made in complaint/counterclaim were binding judicial admissions "is consistent with the general rule that a party is bound by the admissions in the pleadings.") "In general, judicial admissions are formal concession in the pleadings . . . that are binding upon the party making them and may not be controverted at trial or on appeal." *Tri-Lady Marine, Ltd. v. Bishop Mechanical Servs., LLC*, 2018 U.S. Dist. LEXIS 234719, at *8 (S.D. Fla. Sept. 20, 2018) (internal citation omitted). His admission to actual notice of some of the Privacy Policy's terms is an acknowledgment that he had no less than constructive notice of the other terms in the Privacy Policy.

Thus, the Court need not engage in the ordinary analysis attendant to the determination of where the Privacy Policy falls on the spectrum the various web-based contract, despite the question of notice typically being a fact-intensive exercise, because the Complaint contains admissions from

Plaintiff that he obtained notice of the terms of the Privacy Policy. *Babcock v. Neutron Holdings, Inc.*, 454 F.Supp.1222, 1231 (S.D. Fla. 2020) *(citing Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017). That notice extends to the following provision of the Privacy Policy, found at Section 9(b):[1]

> Any dispute over privacy between customer and Dose is subject to the provisions of this notice and to Dose's Terms and Conditions which is hereby incorporated herein and which can be read at https://dosedaily.co/pages/terms-and-conditions.

While the Terms and Conditions contain myriad provisions applicable to Plaintiff's claims, as a threshold matter affecting this Court's jurisdiction is the Terms' robust and comprehensive mandatory arbitration provision at Section 16 which provides, *inter alia*, as follows:

> **16. DISPUTE RESOLUTION**
>
> **Please read the following agreement in this Section 16 ("Arbitration Agreement") carefully. Subject to your right to opt-out, as further described in this Arbitration Agreement, it requires you to arbitrate disputes with Dose, includes a broad wavier of your right to participate in class actions and your constitutional right to a jury trial, and otherwise limits the manner in which you can seek relief from us.**

---

[1] "Although 'a court generally may not consider matters outside of the pleadings without treating the motion as a motion for summary judgment,' one exception [] to this conversion rule' is 'the incorporation-by-reference doctrine.;" *Watson v. Kingdom of Saudi Arabia*, 159 F.4th 1234, 1266 n.4 (11th Cir. 2025) (*quoting Johnson v. City of Atlanta*, 107 F.4th 1292, 12989 (11th Cir. 2024)). The incorporation-by-reference doctrine provides that "a court may properly consider a document" when resolving a motion to dismissing "if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Id.* "A document, by definition, is central to a complaint when it is 'a necessary part of [a plaintiff's] effort to make out a claim.'" *Kalpakchian v. Bank of Am. Corp.*, 832 F.App'x 579, 583 (11th Cir. 2020).

In purporting to set forth Plaintiff's claims that the Website functioned in a way allegedly contrary to what is disclosed in that Privacy Policy, the Complaint makes repeated references to Dose's Privacy Policy, both by quoting directly from it (*see, e.g.,* Complaint ¶¶ 6-7, 172-173), and by providing general descriptions of it (*see, e.g.,* Complaint ¶¶ 2, 178, 249). It is self-evident that the Privacy Policy is not only central to Plaintiff's claims, but is also a document whose authenticity is not challenged given that the Complaint quotes directly from it and links directly to it (*see, e.g.,* n. 2, n. 124). The Court may thus properly consider it as part of Dose's Motion.

> **Applicability of Arbitration Agreement.** Subject to the Terms of this Arbitration Agreement, you and we agree that any dispute, claim, or request for relief by or against Dose arising out of or relating in any way to your access to or Use of the Website, any communications you receive, any Products sold or distributed through the Website, services provided by Dose, or these Terms (each, a "Dispute"), will be resolved by binding arbitration, rather than in court, except that (1) you and Dose may assert claims or seek relief in small claims court if such claims qualify and remain in small claims court; and (2) you or Dose may seek equitable relief in court for infringement or other misuse of intellectual property rights (such as trademarks, trade dress, domain names, trade secrets, copyrights, and patents).
>
> . . .
>
> Waiver of Class and Other Non-Individualized Relief. **ALL DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS OR COLLECTIVE BASIS AND THE PARTIES HEREBY WAIVE ALL RIGHTS TO HAVE ANY DISPUTE BE BROUGHT, HEARD, ADMINISTERED, RESOLVED, OR ARBITRATED ON A CLASS, COLLECTIVE, OR MASS ACTION BASIS. ONLY INDIVIDUAL RELIEF IS AVAILABLE, AND DISPUTES OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER.**

*Pizzitola Decl.*, Exhibit B.

Because the Federal Arbitration Act mandates that "district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]" the FAA limits courts' involvement to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal citation omitted). When these conditions are satisfied, the Court must enforce the agreement to arbitrate. 9 U.S.C. §§ 3,4. These conditions are satisfied because (i) the FAA applies by virtue of the interstate nature of the relationship between the parties (Plaintiff is a Minnesota resident who visited Dose's Website while in Minnesota); (ii) the agreement is valid and enforceable as Plaintiff has admitted to having obtained actual notice of the terms in the Privacy Policy, which expressly incorporate the Terms and Conditions, inclusive of its arbitration agreement;

and (iii) the arbitration agreement's language is broadly worded such that it explicitly covers all of Plaintiff's claims, which purport to arise from his access to and/or use of Dose's Website.

In addition to the foregoing, the Supreme Court has affirmed the validity of private agreements which contain waivers of the right to participate in class or collective actions. *See Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018). Consequently, because Plaintiff is bound to the arbitration agreement in the Terms by virtue of obtaining actual notice of the terms of the Website Privacy Policy, the Court must compel Plaintiff to arbitrate his dispute against Dose on an individual basis.

## IV. PLAINTIFF FAILS TO STATE A CAUSE OF ACTION

### A. Plaintiff Fails to State A Claim for Violation of the Electronic Communications Privacy Act (Count I)

A claim under the ECPA "requires a showing that the defendant (1) intentionally, (2) intercepted, endeavored to intercept [,] or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *See In re Facebook Internet Tracking Litig*., 263 F.Supp.3d 836, 844 (N.D. Cal. 2007 ) (internal quotation marks omitted), *aff'd in part, rev'd in part, and remanded by* 956 F.3d 589 (9th Cir. 2020). Plaintiff does not and cannot satisfy all of these elements. The ECPA claim should be dismissed as a matter of law as a result.

#### *1. Plaintiff Fails to Allege An Unlawful Interception*

Because the ECPA is a one-party consent statute, Plaintiff cannot establish that any communication which Plaintiff had with Dose's Website has been unlawfully "intercepted" by Dose. *See* 18 U.S.C. § 2511(2)(d) (The ECPA does not make it unlawful for someone to "intercept . . . electronic communication where such person is a party to the communication.") *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) ("We [have] concluded that companies that place cookies on a computing device are . . . 'parties to any communications that they acquired,' meaning that such companies are not liable under the Wiretap Act.").

Stated plainly, a party to a communication cannot unlawfully intercept a communication that is directed to it, and it cannot be held liable for allegedly eavesdropping upon itself. 18 U.S.C. § 2511(2)(d); *see also In re Nickelodeon*, 827 F.3d at 274 (dismissing ECPA claim because defendant "was either a party to all communications with the Plaintiff's computers or was permitted to communicate with the Plaintiff's computers by Viacom, who was itself a party to all such communications."); *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142-43 (3d Cir. 2015) (dismissing ECPA claim where tracking cookies placed by advertising provider made the advertiser the intended recipient of an electronic transmission).

Because Dose was a party to Plaintiff's alleged communications with the Website, Dose is not subject to liability for ECPA's claim and Count I must be dismissed accordingly.

***2. 18 U.S.C. 2511(2)(d)'s Statutory Exception Does Not Apply***

The ECPA provides a statutory exception where "a communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d) (hereinafter the "crime-tort exception"). However, the crime-tort exception does not apply to the alleged interception itself - instead, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *In re Google Placement Consumer Priv. Litig.*, 806 F.3d at 145 (internal quotations omitted) (*quoting Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) ("Congress chose the word 'purpose' for a reason. Therefore, the offender must have as her objective a criminal or tortious result.")).

The Complaint makes plain, repeatedly, that the alleged "interception" was for the purpose of advertising. *See, e.g.,* Complaint ¶ 77 ("The harvested data improves Defendant's advertising by pinpointing audience demographics by interests, gender, or location and finding the people who are most likely to take action and view content.") and ¶ 214 ("During the relevant time period, Plaintiff's

electronic communications with the Website were intercepted at the moment they were sent and transmitted to Tracking Entities without Plaintiff's consent. The intercepted information was monetized. Defendant combined that information with data collected about Plaintiff across the internet and used it for advertising, analytics, and marketing optimization.").

This Court should follow the guidance of the myriad courts which have consistently found the crime-tort exception inapplicable to facts which fail to plead any tortious or criminal use of the alleged intercepted communications is insufficient to invoke the crime-tort exception. *See, e.g., In re DoubleClick Inc. Priv. Litig.*, 154 F.Supp.2d 497, 519 (S.D.N.Y. 2001) (finding defendant's motivations to be "licit and commercial," not tortious, and thus, as a matter of law, plaintiffs failed to allege defendants acted with "tortious" purpose"); *Sweat v. Houston Methodist Hosp*., 2025 U.S. Dist. LEXIS 185310 (S.D. Tex. Sept. 22, 2025) (granting summary judgment to defendant where the record showed that defendant did not act with the "purpose of committing any criminal or tortious act"); *Doe v. Genesis Health Sys.*, 2025 U.S. Dist. LEXIS 65328 (C.D. Ill. Mar. 18, 2025) (dismissing ECPA claim because "[b]y plaintiff's own account, the 'trackers' were ''used by the [d]efendant to benefit [the defendant] and its marketing and advertising purposes,' . . . not for the purpose of knowingly committing a violation of the HIPPA." (internal citations omitted); *Zarif v. Hwareh, Inc.*, 789 F.Supp.3d 880 (S.D. Cal. 2025) (declining to apply crime-tort exception because the complaint did not plead a tortious or criminal purpose behind the interceptions); *Goulart v. Cape Code Healthcare, Inc.*, 2025 U.S. Dist. LEXIS 119435, at *4 (D. Mass. June 24, 2025) (declining to apply crime-tort exception "[b]ecause there are no factual allegations in the Complaint from which the court could conclude that [the defendant] installed Meta Pixel and software-tracking technology with the 'primary motivation' of knowingly committing a violation of HIPAA or perpetrating a tort").

### *3. Plaintiff Fails to Allege an Interception of Contents*

Plaintiff's ECPA claim also fails because he has not pled facts showing that the "contents" of any communication were disclosed to a third party. The ECPA defines "contents" of a communication to be "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). This has been interpreted to be distinct from "record" information, which relates to "the characteristics of the message that is generated in the course of the communication," such as a name, address, or the identity of a subscriber or customer. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014). Here, while the Complaint defines as "Sensitive Information" categories of information delineated at paragraph 4, it falls short because (i) every category of information listed is outside the scope of what courts deem to be contents of a communication; (ii) the Complaint is exceedingly short on facts concerning what information of *Plaintiff's* was allegedly intercepted during *his* interaction with the Website despite being quite long on allegations concerning how the alleged tracking technologies purportedly function in general.

For example, while Plaintiff conclusorily alleges that "Google Ads intercepted Plaintiff's search terms," he does not specify the content of such search, instead embedding an image which is explicitly labeled "Test search made on the Website." Complaint fig. 20. The absence of any facts concerning the "what" as to the particular content Plaintiff claims was intercepted is no trivial matter, as not every text entered into a search field can automatically be deemed to be content for statutory purposes. If, for example, Plaintiff's search terms were "123456" or "Robert Gulley," neither could seriously be considered the purport or meaning of a real communication with the Website. The pleading leaves both Dose and the Court guessing as to the particulars of the search terms, and instead simply labels them as contents of a communication. The same can be said about the rest of the categories listed by Plaintiff – what mouse movements were captured? What did he click on? What keystrokes did he enter? As the one who allegedly visited the Website, all of this information should

be available to Plaintiff, but it has not been specified. This pleading deficiency is insufficient as a matter of law.

Moreover, while the Complaint uses the misleadingly defined term "Sensitive Information" to describe the categories of information comprising the definition, not only are none of the categories actually sensitive information akin to financial or health-related information, but Courts consistently find that the categories simply do not constitute the content of a communication and therefore do not give rise to an ECPA claim even when otherwise intercepted. Identifiers, button and link clicks, browser interactions, routing and address information, IP address, operating system, browser type, and geolocation data all fall under the umbrella of categories of information which courts do not find to be contents of a communication for ECPA purposes. *See In re Google Inc.*, 806 F.3 125, 137 (3d Cir. 2015) (finding that the term "contents' does not include "dialing, routing, addressing, or signaling information" such as "addresses, phone numbers, and URLs . . . when they are performing such a function"); *Cook v. GameStop, Inc.*, 689 F.Supp. 3d 58, 71 (W.D. Pa. 2023) ("Location identifiers, like URLs, have classically been associated with non-content means of establishing communication) (internal quotation marks omitted); *Graham v. Noom, Inc.*, 533 F.Supp.3d 823, 833 (N.D. Cal. 2021) (dismissing complaint to the extent that it alleged non-content information including IP address, locations, browser types, and operating systems.).

### B. <u>Plaintiff Fails to State A Claim for Violation of the Florida Security of Communications Act (Count II)</u>

The FSCA provides that anyone "whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of [certain Florida statutes] shall have a civil cause of action against any person or entity who intercepts, discloses or uses, or procures any other person or entity to intercept, disclose, or use, such communications." Fla. Stat. Ann. § 934.10(1). Plaintiff fails to satisfy these elements, as demonstrated below, and as a result the claim must be dismissed with prejudice.

### *1. Plaintiff is a Minnesota Resident*

To establish a claim under the FSCA, "plaintiffs bringing suit must be residents of Florida or the interception at issue must have occurred in Florida." *Cohen Bros., LLC v. ME Corp., S.A.*, 872 So.2d 321, 324 (Fla. 3d DCA 2004). An interception occurs where the communication originated, not where it is heard. *Stalley v. ADS Alliance Data Sys., Inc.*, 997 F.Supp. 2d 1259, 1265 (M.D. Fla. 2014); *State v. Mozo*, 655 So.2d 1115, 1117 (Fla. 1995).

Plaintiff's Complaint alleges unambiguously that the place of origin of the disputed communication was Minnesota, not Florida. Complaint ¶ 16 ("Plaintiff Robert Gulley is, and at all relevant times has been, a citizen and resident of the State of Minnesota . . . Most recently, in or about March 2025, Plaintiff visited the Website while physically located in Minnesota."). For this reason, and this reason alone, Count II must be dismissed with prejudice.

Those Courts which have been asked by plaintiffs to adjust the definition of the point of interception in the case of electronic communications have declined the opportunity to do so. *See, e.g., Strusowski v. Nemours Found.*, 2023 U.S. Dist. LEXIS 223389, at *6-7 (E.D. Pa. Dec. 14 2023) ("Plaintiffs suggest that the realities of advanced technology may require that the definition of the point of interception evolve in the electronic context and thereby requires a more developed factual record to determine precisely where the browser communications were intercepted and whether that precise location might be Florida . . . This Court will not seek to disrupt Florida courts' determination that the FSCA's aims are best supported by defining interception at the point of the communication's origin."). Plaintiff lacks the statutory standing to pursue Count II.

### *2. The FSCA Does not Apply to the Technology At Issue*

Fla. Stat. § 934.02(12)(c) expressly excludes from the definition of "electronic communication" "[a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object." Florida state and federal courts have thus

interpreted the FSCA to definitionally exclude technology, including session replay software, that tracks a website browser's movements. *See, e.g., Jacome v. Spirit Airlines Inc.*, 2021 Fla. Cir. LEXIS 1435 (Fla 11th DCA 2021); *Connor v. Whirlpool Corp.*, 2021 U.S. Dist. LEXIS 125275 (S.D. Fla. July 6, 2021) (finding FSCA inapplicable where "Defendant's alleged interception of Plaintiff's electronic communications allowed Defendant to capture, observe, and divulge Plaintiff's personal interests, browsing history, queries, and habits as he interacted with and browsed Defendant's website" . . . ); *Goldstein v. Luxocitta of Am., Inc.*, 2021 U.S. Dist. LEXIS 158935 (S.D. Fla. Aug. 20, 2021) (same).

Moreover, the FSCA is modeled after, and in substance tracks, the Federal Wiretap Act. *O'Brien v. O'Brien,* 899 So.2d 1133, 1135-1136 (Fla. 5th DCA 2005). As discussed in the prior section, courts interpreting the *contents* of a communication under the ECPA distinguish between "a record or other information pertaining to a . . . customer" (known as "record information") and the contents – i.e., the "substance, purport, or meaning" – of the communication itself." *Goldstein v. Costco Wholesale Corp.*, 559 F.Supp.3d 1318, 1321 (S.D. Fla. 2021) (*quoting In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). While Plaintiff has labeled the categories of information purportedly intercepted as contents, those same categories have been deemed *not* to convey the substance of any communication in nearly analogous circumstances. *See, e.g., Goldstein v. Costco*, 559 F.Supp.3d at 1321 ("Plaintiff's purported substance includes (1) his movements on the website ('mouse clicks and movements,' 'scroll movements,' and 'pages and content viewed') and (2) information voluntarily input ('keystrokes,' 'copy and paste actions,' 'search terms,' and 'information inputted by Plaintiff.' But contrary to Plaintiff's interpretation, these actions did not convey the substance of any communication. Rather, this mere tracking of Plaintiff's movements on Defendant's websites is the cyber analog to record information Defendant could have obtained through a security

camera at a brick-and-mortar store. The FSCA's text reinforces that such actions fall outside the statute's purview.").

Similarly, while Plaintiff does not specifically label the technology at issue as session replay software, his description of the functionality of the technology mirrors how Courts have described session replay technology when dismissing identical FSCA claims. Compare the following allegation in the complaint at paragraph 3 "Defendant's use of cookies, web beacons, and similar tools (the "Tracking Tools") enables Tracking Entities to monitors users' activity, including webpage browsing activity, viewing specific products, and initiating check to purchase products, across the Website in real time . . ." with the Middle District's description of session reply software: "Session replay software records website visitors' mouse clicks, keystrokes, search terms, and other ways in which they interact with the website – information that companies use to help increase online sales." *Makkinje v. Extra Space Storage, Inc.*, 2022 U.S. Dist. LEXIS 3817 (M.D. Fla. Jan. 7, 2022). The Complaint purports to describe technology which Courts interpreting the FSCA have found the statute does not regulate. Count II must be dismissed as result.

**C. <u>Invasion of Privacy – Intrusion Upon Seclusion</u>**

Plaintiff alleges that "Florida recognizes the tort of invasion of privacy, including intrusion upon seclusion or intrusion into private affairs." Complaint ¶ 246. He further alleges that "[u]nder Florida law, intrusion upon seclusion occurs where a defendant physically or electronically intrudes into one's private quarters in a manner that would be highly offense to a reasonable person." Dose agrees that Plaintiff has accurately stated the elements of a claim for intrusion for seclusion – however, Plaintiff has failed to sufficiently state a claim for relief under such a theory.

"Florida law explicitly requires an intrusion into a private place and not merely into a private activity." *W.W. v. Orlando Health, Inc.*, 2025 U.S. Dist. LEXIS 40038, at *27 (M.D. Fla. Mar. 6, 2025) (*quoting Pet Supermarket, Inc. v. Eldridge*, 360 So.3d 1201, 1207) (Fla. Dist. Ct. App. 2023).).

"This standard is met where a plaintiff's home is intruded into." *Id.* *See also Allstate Ins. co. v. Ginsburg*, 863 So.2d 156, 162 (Fla. 2003) (distinguishing between Alabama and Florida's version of the law of intrusion upon seclusion on the basis of Alabama's adoption of the Restatement's reliance on "private activities" while Florida requires intrusion into "private quarters"). "The Supreme Court of Florida has construed the tort of intrusion upon seclusion even more narrowly than the Restatement . . . [and i]t has required a plaintiff to show an intrusion into a private place and not merely a private activity." *Hammer v. Sorenson*, 824 F.App'x 689, 695 (11th Cir. 2020) (citation omitted).

Plaintiff has not set forth a cognizable claim under Florida law because his allegations demonstrate that the claim is based upon an alleged intrusion into private activities, rather than a private place. *See, e.g.,* Complaint ¶ 248 ("Plaintiff . . . possessed legally protected privacy interests in the data resting on Plaintiff's devices and [his] **private activities** . . . transmitted **while using Defendant's Website**) (emphasis added), ¶ 249 ("Plaintiff . . . had a reasonable expectation that [his] **private online browsing activity** . . . . would not be intercepted . . .) (emphasis added).

Plaintiff's failure to allege any alleged intrusion implicating his private quarters mandates that the Court dismiss Count III with prejudice. *See Grayson v. Ubl*, 2024 Fla. Cir. LEXIS 3368, at * 8 (Fla. Cir Ct. Aug. 7, 2024) ("The intrusion can be physical or electronic. But it must be into a physical space. For example, electronically intruding into a house by hacking into a baby monitor would be an electronic intrusion into the seclusion of a physical place. But an intrusion into an electronic device as it relates to private activities is not itself covered by [the] intrusion seclusion tort.").

### D. Fraud, Deceit, and/or Misrepresentation

Plaintiff's claim for recovery based on a theory of fraud, deceit and/or misrepresentation fails for at least three distinct reasons. First, it is not pled with the specificity required by Fed. R. Civ. P. 9(b). Second, the substance of the claim is flatly undermined by the terms of the Privacy Policy itself. And third, it is barred by the economic loss rule.

Rule 9(b) imposes a heightened standard of pleading upon claims alleging fraud. *See Cooper v. Blue Cross & Blue Shield of Florida*, 19 F.3d 562, 568 (11th Cir. 1994) ("Federal Rule of Civil Procedure 9(b) requires that fraud be plead with specificity."). The purpose behind Rule 9(b)'s specificity requirement "is to eliminate fraud actions in which all of the facts are learned through discovery after the complaint is filed." *Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985). Plaintiff's claim of fraud does not comport with the requirements of Rule 9(b). Most relevant to Plaintiff's pleading failure is that the Complaint alleges that "Plaintiff accessed and used Defendant's Website on multiple occasions," and while it later says that the most recent of those visits occurred in March 2025, it is not clear from the pleading when Plaintiff claims that he obtained actual notice of the representations made in the Privacy Policy and/or when he relied upon them. The who, what, when, and where of fraud claims are critical and must be plead specifically. It is conceivable based on information omitted from the pleading that, for example, Plaintiff saw and reviewed the representation outside of the statute of limitations period. That failure to satisfy Rule 9(b)'s heightened pleading standard is fatal to the fraud claim.

Moreover, the Privacy Policy itself simply contradicts Plaintiff's allegations.[2] Among the provisions of the Privacy Policy which contradict the substance of Plaintiff's claims of misrepresentations are the following:

> **2. Personal Information That May be Collected.**
> **(f) Information Automatically Collected** Dose automatically collects certain information when you visit, use, or navigate the Website. The information does not reveal your specific identify (such as your name or contact information) but may include device and usage information, such as your IP address, browser and device characteristics, operating system, language preferences, referring URLs, device name, country, location, information and how and when you used the Website, and other technical information. . . .
>
> **5. Third-Party Analytics and Interest-Based Advertising**

[2] Dose refers to n. 1 for the basis by which the Court may properly consider the Privacy Policy when deciding Dose's Motion.

> Dose also partners with Third Parties to provide advertising services that are targeted based on customer's online activities across websites and devices over time (commonly referred to as "interest-based advertising"). Third parties may collect information about customer activities on the Website on customer's current device and combine it with information about customer's activities on other website activities and devices. Third parties may collect such information using server logs, cookies, web beacons, tags, pixels, cross-device linking, and similar technologies.
>
> **6. Use of Computer Tracking Technologies**
> **(a) Use of Cookies**
> **(b) Use of Web Beacon Technologies**
> **(c) Collection of Non-Identifiable Information**
> **(d) Collection of Personal Information**

*Pizzitola Decl.*, Exhibit A.

Finally, Plaintiff's claims are barred by the economic loss rule. The economic loss rule provides that "without some conduct resulting in personal injury or property damage, there can be no independent tort flowing from a contractual breach which would justify a tort claim solely for economic losses." *AFM Corp. v. Southern Bell Tel. & Tel. Co.*, 515 So. 2d 180, 181-82 (Fla. 1987). It is well settled that a party may not recover damages for both breach of contract and fraud unless the party first establishes that the damages arising from the fraud are separate or distinguishable from the damages arising from the breach of contract. *Williams v. Peak Resorts Int'l*, 676 So.2d 513, 517 (Fla. 5th DCA 1996). The Complaint makes repeated allegations that the Website's functionality differed from the representations of the Privacy Policy. Notwithstanding the accuracy of that allegation, it nevertheless fundamentally represents a breach of contract claim. The economic loss rule exists to preclude claims for fraud just like Plaintiff's. It must be dismissed accordingly.

**E. <u>Unjust Enrichment</u>**

To state a claim for unjust enrichment under Florida law, a plaintiff must allege facts that, if taken as true, would show: (1) a benefit was conferred upon the defendant; (2) the defendant either request the benefit or knowingly and voluntarily accepted it; (3) a benefit flowed to the defendant; and

(4) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying the value thereof. *W.R. Townsend Contr. Inc. v. Jensen Civ. Constr., Inc.*, 728 So.2d 297, 303 (Fla. 1st DCA 1999).

"In Florida, the law of unjust enrichment requires a benefit to pass directly from the plaintiff to the defendant and that there be no available legal remedy at law." *Allgood v PaperlessPay Corp.*, 2022 U.S. Dist. LEXIS 51139, at *30 (M.D. Fla. Mar. 22, 2022); *see also Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F.Supp.2d 1269, 1287 (S.D. Fla. 2013). The Complaint makes plain that Plaintiff alleges any benefit allegedly conferred on Defendant was *indirect*, rather than *direct*. To be sure, Plaintiff alleges the following: "Defendant obtained a benefit by collecting, processing, and enabling **third-party monetization** of Plaintiff's and Class Members' Sensitive Information**, which Defendant then used to increase the effectiveness of advertising, marketing and sales to generate revenue**," and "The information was collected **and transmitted** in breach of Defendant's representations to users." Complaint ¶ 275-276 (emphasis added). What Plaintiff is alleging is that third parties benefitted from receipt of Plaintiff's information and then those third parties subsequently conferred a benefit on Defendant. This is insufficient to allege a claim for unjust enrichment. Count V must be dismissed accordingly.

## V. <u>Plaintiff Has Failed to Adequately Invoke CAFA Jurisdiction</u>

Pursuant to 28 U.S.C. § 1332(d), district courts have jurisdiction over any class action in which (1) the proposed class contains at least 100 members; (2) any member of the class is a citizen of a state different from any defendant, and (3) the amount in controversy, as determined by the aggregated claims of the class, exceeds $5 million. CAFA did not alter the traditional rules concerning the burden of persuasion regarding jurisdictional issues, however. *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir. 2006). Plaintiff must carry the burden of establishing, by a preponderance of the evidence, that the Court has jurisdiction pursuant to CAFA. *Dudley v. Eli Lilly & CO.*, 778 F.3d 909,

913 (11th Cir. 2014). No presumptive truthfulness attaches to plaintiff's allegations, as the court is free to satisfy itself as to the existence of its power to hear the case. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

Plaintiff makes a single allegation regarding the amount in controversy: "the aggregate amount in controversy exceeds $5,000,000.00., exclusive of interest, fees, and costs." Complaint. ¶ 18. This is a conclusion, not a factual allegation. The Eleventh Circuit has determined that in such a situation, where the plaintiff pleads an unspecified amount of damages, or alleges "in conclusory fashion" that his damages exceed the jurisdictional threshold, he bears the burden of *proving* the jurisdictional amount by a preponderance of the evidence. *Doane v. Tele Circuit Network Corp.*, 852 Fed. Appx. 404, 407 (11th Cir. 2021); *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018).

As demonstrated in the foregoing sections, Plaintiff's claims for statutory damages fail as a matter of law. With respect to the common law claims that might remain, he has failed to specify the value of what his own damages purport to be, let alone specify how the damages exceed $5 million when aggregated across a class of an unspecified number of members. For his failure to satisfy the pleading requirements to invoke the Court's subject matter jurisdiction pursuant to CAFA, the Court must dismiss the putative class claims asserted in Counts III, IV, and V (and Count II, to the extent that the Count is not otherwise dismissed in accordance with Defendant's arguments, *supra.*).

## VI. The Court Lacks Diversity Jurisdiction Over Counts III, IV, and V

For the identical reason that the putative class claims of Counts III, IV, and V must be dismissed, so must those Counts individual claims. Plaintiff has failed to adequately plead the requisite amount in controversy to satisfy the diversity jurisdiction requirements applicable to his state common law claims against Dose. In fact, Plaintiff has not set forth any measure of damages, even in the conclusory fashion that it was done for purposes of attempting to invoke CAFA jurisdiction. For that reason, the Court should dismiss Counts III, IV, and V.

**Local Rule 7.1(a)(3) Certification**

Undersigned counsel for Defendant has conferred with Plaintiff's counsel regarding the portions of the Motion not otherwise exempt from the meet and confer requirements, and represents that Plaintiff opposes the relief requested thereby.

Dated: May 11, 2026

**KLEIN MOYNIHAN TURCO LLP**

*Attorneys for Eetho Brands Inc. d/b/a Dose*

By: /s/ Neil E. Asnen
Neil E. Asnen (admitted *pro hac vice*)
450 Seventh Avenue, 40th Floor
New York, NY 10123
T: (212) 246 – 0900
nasnen@kleinmoynihan.com

-and-

**SONN LAW GROUP PA**

Jeffrey R. Sonn
Bar ID #: 773514
jsonn@sonnlaw.com
19495 Biscayne Blvd Ste 607
Aventura, FL 33180
(305) 912-3000

**CERTIFICATE OF SERVICE**

I certify a true and correct copy of the foregoing was served upon all counsel of record via CM/ECF on the 11th Day of May, 2026.

/s/ *Jeffrey R. Sonn*
Jeffrey R. Sonn