**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ROBERT GULLEY, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EETHO BRANDS INC., d/b/a DOSE,<br><br>Defendant. | Case No. 1:26-cv-21113-KMM-MFE |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND/OR DISMISS**

**TABLE OF CONTENTS**

I. Introduction ..... 1
II. Background ..... 1
III. Legal Standard ..... 3
A. Motion to Compel Arbitration ..... 3
B. Motion to Dismiss ..... 4
IV. Argument ..... 5
A. Defendant's Motion to Compel Arbitration Should Be Denied ..... 5
1. The Privacy Policy Did Not Put Plaintiff On Notice ..... 5
2. The Website Did Not Put Plaintiff On Notice ..... 6
B. Defendant's Motion to Dismiss Should Be Denied ..... 8
1. Plaintiff Pleads a Violation of the Federal Wiretap Act ..... 8
a. Plaintiff Has Alleged Interception ..... 8
b. Plaintiff Has Alleged the Interception of Contents ..... 8
c. The Party Defense Does Not Apply ..... 9
2. Plaintiff Pleads a Violation of the Florida Security of Communications Act ..... 11
3. Plaintiff States a Claim for Intrusion ..... 13
4. Plaintiff States a Claim for Common Law Fraud, Deceit, and/or Misrepresentation ..... 14
5. Plaintiff States a Claim for Unjust Enrichment ..... 16
6. The Court Has Subject Matter Jurisdiction ..... 17
V. Conclusion ..... 18

# TABLE OF AUTHORITIES

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ........ 12

*Abel Homes at Naranja Villas, LLC v. Hernandez*,
960 So.2d 891 (Fla. 3d DCA 2007) ........ 6

*Allied Seed, LLC v. Norfarm Seeds, Inc.*,
2021 WL 1118035 (D. Minn. Mar. 24, 2021) ........ 5

*Allison v. PHH Mortg.*,
2026 WL 899438 (N.D. Cal. Mar. 27, 2026) ........ 10

*Allstate Ins. Co. v. Ginsberg*,
863 So.2d 156 (Fla. 2003) ........ 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4

*Bazemore v. Jefferson Cap. Sys., LLC*,
827 F.3d 1325 (11th Cir. 2016) ........ 4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4

*Butler v. Yusem*,
44 So.3d 102 (Fla. 2010) ........ 14

*Cafaro v. Zois*,
2015 WL 3821752 (S.D. Fla. June 2, 2015) ........ 16

*Caldwell v. InMobi Pte Ltd*,
2026 WL 1162828 (N.D. Cal. Apr. 29, 2026) ........ 10

*Cohen Bros., LLC v. ME Corp., S.A.*,
872 So.2d 321 (Fla. 3rd DCA 2004) ........ 11

*Continent Aircraft Trust 1087 v. Diamond Aircraft Indus., Inc.*,
2013 WL 2285539 (S.D. Fla. May 23, 2013) ........ 16

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ........ 10

*Crowley Maritime Corp. v. Robertson Forwarding Co., Inc.*,
2020 WL 4366079 (S.D. Fla. July 30, 2020) ........ 4

*D.S. v. Tallahassee Mem'l Healthcare*,
2024 WL 2318621 (N.D. Fla. May 22, 2024) .................... 10, 11

*Dart Cherokee Basin Operating Co. v. Owens*,
574 U.S. 81 (2014) .................... 17

*Dawson v. Univ. of Phoenix, Inc.*,
2026 WL 92248 (D. Ill. Jan. 13, 2026) .................... 10

*Denelsbeck v. Wells Fargo & Co.*,
666 N.W.2d 339 (Minn. 2003) .................... 5

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .................... 8

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) .................... 12

*Federated Mut. Ins. Co. v. McKinnon Motors, LLC*,
329 F.3d 805 (11th Cir. 2003) .................... 17

*Fridman v. 1-800 Contacts, Inc.*,
554 F. Supp. 3d 1252 (S.D. Fla. 2021) .................... 7

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021) .................... 12

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010) .................... 6

*Grayson v. Ubl*,
2024 Fla. Cir. LEXIS 3368 (Fla. Cir. Ct. Aug. 7, 2024) .................... 14

*Hall v. Sargeant*,
2020 WL 1536435 (S.D. Fla. Mar. 30, 2020) .................... 13

*Hammer v. Sorenson*,
824 F. App'x 689 (11th Cir. Aug. 11, 2020) .................... 13

*Herman v. Seaworld Parks & Entm't, Inc.*,
2016 WL 7447555 (M.D. Fla. Aug. 26, 2016) .................... 5

*Hovanec v. Miller*,
2018 WL 1221486 (W.D. Tex. Mar. 7, 2018) .................... 13

*In re Brinker Data Incident Litig.*,
2020 WL 691848 (M.D. Fla. Jan. 27, 2020) .................... 16

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) .................... 8, 12

*In re Meta Pixel Healthcare Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. Jan. 29, 2024) .......... 14

*In re Pharmatrak, Inc. Privacy Litig.*,
329 F.3d 9 (1st Cir. 2003) .......... 8

*In re: Meta Android Priv. Litig.*,
--- F. Supp. 3d ---, 2026 WL 1279416 (N.D. Cal. May 11, 2026) .......... 14

*Jacome v. Spirit Airlines, Inc.*,
2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) .......... 12

*Jimenez v. Crumbl Franchising, LLC*,
2026 WL 1270013 (M.D. Fla. Mar. 18, 2026) .......... 6, 7

*Lopez v. Herro*,
2025 WL 3458529 (S.D. Fla. Dec. 2, 2025) .......... 3, 4, 6, 7

*Lugo v. Inova Health Care Serv.*,
2025 WL 905191 (E.D. Va. Mar. 25, 2025) .......... 10

*Mason v. Midland Funding LLC*,
815 F. App'x 320 (11th Cir. 2020) .......... 3, 4

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .......... 9

*Neeley v. Wells Fargo Financial, Inc.*,
2012 WL 5949106 (M.D. Fla. Nov. 28, 2012) .......... 13

*Otto Candies, LLC v. Citigroup Inc.*,
137 F.4th 1158 (11th Cir. 2025) .......... 15

*Powerine Oil Co., Inc. v. Superior Court*,
118 P.3d 589 (Cal. 2005) .......... 6

*Q.J., v. Powerschool Holdings, LLC*,
2025 WL 241047 (N.D. Ill. Aug. 20, 2025) .......... 10

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 12, 14

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) .......... 4

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 10

*Secs. & Exch. Comm'n v. Perez*,
2011 WL 13220451 (S.D. Fla. Mar. 18, 2011) .......... 16

*Simon v. Nat'l Passenger Corp.*,
2025 WL 326664 (M.D. Fla. Jan. 29, 2025) .................................................................. 4

*Speaker v. U.S. Dep't of Health & Human Servs.*,
623 F.3d 1371 (11th Cir. 2010) ..................................................................................... 9

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*,
524 F.3d 1229 (11th Cir. 2008) ..................................................................................... 4

*Stirling Int'l Realty, Inc. v. Soderstrom*,
2015 WL 403318 (M.D. Fla. Jan. 28, 2015) ................................................................ 13

*Tejon v. Zeus Networks, LLC*,
725 F. Supp. 3d 1351 (S.D. Fla. 2024) ........................................................................... 7

*Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*,
110 So.3d 399 (Fla. 2013) ............................................................................................ 16

*Travertine Corp. v. Lexington-Silverwood*,
683 N.W.2d 267 (Minn. 2004) ....................................................................................... 5

*United States v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010) .......................................................................................... 8

*Valiente v. NexGen Global, LLC*,
2023 WL 6213583 (S.D. Fla. Sept. 25, 2023) ............................................................ 4, 7

*Vista Mktg., LLC v. Burkett*,
812 F.3d 954 (11th Cir. 2016) ...................................................................................... 13

*Vriezen v. Infinite Health Collaborative, P.A.*,
2025 WL 2992204 (D. Minn. Sept. 30, 2025) ................................................................. 9

*W.W. v. Orlando Health, Inc.*,
2025 WL 722892 (M.D. Fla. Mar. 6, 2025) ........................................................ 10, 11, 12, 14

*Walsh v. Dollar Tree Stores*,
2025 WL 2939229 (N.D. Cal. 2025) ............................................................................. 13

*West Resort, S.A. v. Twin Vee Catamarans, Inc.*,
2018 WL 11656387 (S.D. Fla. Jan. 23, 2018) ............................................................... 16

*Williams v. Wells Fargo Bank N.A.*,
2011 WL 4368980 (S.D. Fla. Sept. 19, 2011) ............................................................... 17

**Statutes**

18 U.S.C. § 2510(4) .... 8

18 U.S.C. § 2511 .... 8

18 U.S.C. § 2511(1)(b) .... 9

18 U.S.C. § 2511(2)(d) .... 9

18 U.S.C. § 2520(c)(2)(B) .... 17

28 U.S.C. § 1331 .... 17

Fla. Stat. § 934.02(12)(c) .... 12

## I. INTRODUCTION

Defendant Eetho Brands Inc., d/b/a Dose, offers "[d]aily supplements" for "Your Body's Core Systems"; its two primary products are "Dose for your Liver" and "Dose for Cholesterol." It also offers other wellness shots and related health products. Accordingly, consumers who access Defendant's website, like Plaintiff, inherently are seeking information related to health. Defendant's products target consumers with liver disease, high cholesterol, and other serious health concerns. Nonetheless, Defendant allows third parties to intercept user data from its website, identify the individuals behind that data, build consumer profiles, and sell targeted advertising. Worse still, Defendant promises consumers on its website that, while it does share some data with third parties, that data will not be used to identify the individuals to whom it belongs. This misrepresentation causes consumers—including Plaintiff—to continue using Defendant's website, unknowingly providing health-related information to third parties along with contact information and other data.

Plaintiff has filed suit as the representative of a proposed class of consumers who use Defendant's website and whose information Defendant illegally shared with third-party companies. Defendant seeks to dismiss Plaintiff's claims, arguing that Plaintiff should be compelled to arbitrate, that Plaintiff fails to state a claim, and that this Court lacks subject matter jurisdiction. These arguments fail, however, because they are premised on a contract that Plaintiff never agreed to, based on a fundamental failure to understand the technology at issue, and contravene the weight of jurisprudence discussing similar tracking technology.

## II. BACKGROUND

Defendant owns and manages a website at https://dosedaily.co (the "Website") through which it markets, advertises, and sells wellness shots and related health products directly to consumers. Compl. (Dkt. 1) ¶ 2. The Website allows users to browse information about its products, make online purchases, enroll in subscription offerings, manage customer accounts, and access customer support and other consumer-focused content. *Id.* Defendant offers products purporting to, *inter alia*, aid liver health and lower cholesterol.[1]

Defendant begins placing and transmitting third-party tracking technologies, including cookies and web beacons, immediately upon a visitor's initial visit to the Website. *Id.* ¶ 3. Third-

---

[1] *Dose*, DOSEDAILY.CO, https://dosedaily.co/ (last visited May 26, 2026).

party advertising and analytics companies (the "Tracking Entities") (including TikTok, Meta, Google, Twitter, Reddit, Snapchat, and Microsoft), then access consumers' electronic communications and online activity via URLs, metadata, and cookies. *Id.* Cookies, web beacons, and similar tracking tools (the "Tracking Tools") enable the Tracking Entities to monitor users' activity—including webpage browsing, viewing specific products, and initiating checkout—across the Website in real time and to associate that activity with specific identifiers. *Id.* The communications of users who interact with the Website are intercepted in *both* directions as the Tracking Tools capture and record both incoming and outgoing requests. *See, e.g.*, *id.* ¶¶ 17, 45-46, 100, 131, 155.

This tracking captures and transmits: (1) information contained in cookies, including identifiers linking to users' Facebook profiles; (2) detailed interaction and behavioral data, including buttons, forms, and other on-page elements users interact with, as well as information entered into search fields (*e.g.*, "lower cholesterol" or "help liver function"); (3) routing and addressing information, including location information, IP addresses, and persistent identifiers regarding the source of communications and the destination for the data; and (4) device and technical identifiers such as device type, operating system, browser type; visitor identifiers that enable recognition across sessions and websites; and approximate location. *Id.* ¶ 4. The Tracking Entities use this data to infer users' interests, preferences, age, or other characteristics. *Id.*[2]

The Website references its use of cookies[3] and related tracking technologies in its Privacy Policy. Compl. ¶ 2. The Privacy Policy outlines the Website's use of Tracking Tools, defining "cookies" as "an alphanumeric identifier that a website can transfer to a customer's hard drive through a customer's browser. The cookie is then stored on the customer's computer as an anonymous tag that identifies the customer's computer, but not the customer." *Id.* This statement is false. Cookies personally identify users and track their activity on the Website. *Id.* ¶ 6. The

---

[2] For a more fulsome explanation of the technology involved in this process, Plaintiff respectfully refers the Court to his complaint, paragraphs 21-170.

[3] "Cookies" are data files created on a user's device after receiving instructions and data from a website's server. These cookies can persist for days or years after being created, and their persistent nature allows cookies to be accessed on third party websites unrelated to the creator of the cookie. *See generally Using HTTP cookies*, MOZILLA, https://developer.mozilla.org/en-US/docs/Web/HTTP/Guides/Cookies (last visited May 26, 2026).

Privacy Policy also represents that "Third Parties cannot do anything with customer's personal information unless [Defendant] has instructed Third Parties to do so." *Id.* ¶ 7. Once again, this claim is false. Third-party Tracking Entities collect users' personal information via the Tracking Tools and use it for their own marketing purposes. *Id.* Indeed, the Tracking Entities intercept, collect, and use consumers' electronic communications to build advertising profiles, sell targeted advertising, create lookalike audiences,[4] train algorithms, and develop new products. *Id.* Finally, the Privacy Policy included a provision purporting to incorporate separate Terms and Conditions, which are a part of a contract purportedly formed when a consumer "enter[s] into a purchase order and/or subscrib[es] to D[efendant]'s services." Privacy Policy (Dkt. 20-1) § 9(b). Those Terms and Conditions included a Dispute Resolution provision purporting to bind the consumer to "arbitrate disputes with" Defendant. Terms & Conditions ("Terms") (Dkt. 20-2) § 16.

Plaintiff lives in Minnesota and has accessed and used the Website multiple times while in Minnesota. *Id.* ¶¶ 9, 16. During those visits, Plaintiff's communications with the Website were intercepted, recorded, and transmitted without Plaintiff's knowledge or consent. *Id.* ¶ 9. This information was also immediately correlated with Plaintiff's identity. *Id.*

On February 19, 2026, Plaintiff filed suit, bringing claims under the Federal Wiretap Act, 18 U.S.C. § 2510, et seq.; the Florida Security of Communications Act, Fla. Stat. § 934.01, et seq.; and Florida common law for invasion of privacy, common law fraud, deceit, and/or misrepresentation, and unjust enrichment. *Id.* ¶¶ 200-277. On May 11, 2026, Defendant filed the present Motion to Compel Arbitration and/or Dismiss the Complaint (Dkt. 20) (the "Motion").

## III. LEGAL STANDARD

### A. Motion to Compel Arbitration

"The Federal Arbitration Act ('FAA') creates a presumption of arbitrability . . . any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Lopez v. Herro*, 2025 WL 3458529, at *3 (S.D. Fla. Dec. 2, 2025) (quoting *Mason v. Midland Funding LLC*, 815 F. App'x 320, 323 (11th Cir. 2020)). "However, this presumption does not apply to

[4] Tracking Entities use "demographics, interests and behaviors" "to find new people who share similar qualities" to create a lookalike audience. Then, when an advertiser uses that audience, its "ad is delivered to an audience of people who are similar to . . . existing customers." Business help Center: *About lookalike audiences*, Meta , https://www.facebook.com/business/help/164749007013531?id=401668390442328 (last visited May 26, 2026).

disputes concerning whether an agreement to arbitrate has been made." *Id.* (alteration adopted) (quoting *Mason*, 815 F. App'x at 323).

"Under the FAA, a party seeking to compel arbitration must demonstrate that (a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of the agreement." *Simon v. Nat'l Passenger Corp.*, 2025 WL 326664, at *2 (M.D. Fla. Jan. 29, 2025) (citation omitted). "'[C]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable" evidence that they did so.'" *Valiente v. NexGen Global, LLC*, 2023 WL 6213583, at *3 (S.D. Fla. Sept. 25, 2023) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010)). "[T]he determination of whether the parties have agreed to submit a dispute to arbitration is an issue of law." *Id.* at *4 (citation omitted). "[I]n deciding whether the parties agreed to arbitrate their claims," courts apply "a summary-judgment-like standard." *Id.* at *3 (quoting *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016)). Courts should "treat[] the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Id.* (citation omitted).

**B. Motion to Dismiss**

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(1), a defendant may bring a "[m]otion[] to dismiss a complaint for lack of subject matter jurisdiction" as "either a facial or factual attack on the complaint." *Crowley Mar. Corp. v. Robertson Forwarding Co., Inc.*, 2020 WL 4366079, at *2 (S.D. Fla. July 30, 2020) (citing *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008)). A facial attack requires the court to "see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction," whereas a factual attack "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings." *Stalley*, 524 F.3d at 1232-33. "When defending against a facial attack, . . . 'the court must consider the allegations in the plaintiff's complaint as true.'" *Id.*

Under FRCP 12(b)(6), a complaint survives a motion to dismiss if it states a claim that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept all factual allegations as true but is not bound to accept legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must provide more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

## IV. ARGUMENT

### A. Defendant's Motion to Compel Arbitration Should Be Denied

#### 1. The Privacy Policy Did Not Put Plaintiff On Notice

Defendant is incorrect that Plaintiff had constructive notice of the arbitration clause in its Terms. Even accepting, *arguendo*, that Plaintiff had constructive notice of all the provisions in the Privacy Policy, he did not have notice that the Terms would apply to him; indeed, the Privacy Policy explicitly provides the Terms would *not* apply to him.

The relevant provision in the Privacy Policy reads as follows:

> **Terms and Conditions.** By *entering into a purchase order and/or subscribing to Dose's services*, you are hereby deemed to accept Dose's practices described in this policy statement. Any dispute over privacy between a customer and Dose is subject to the provisions of this notice and to Dose's Terms and Conditions, which are hereby incorporated herein and can be read at https://dosedaily.co/pages/terms-and-conditions.

Privacy Policy § 9(b) (emphasis added). The complaint does not allege that Plaintiff "enter[ed] into a purchase order" or "subscrib[ed] to Dose's services." Instead, it alleges that he "accessed," "used," and "visited" "Defendant's Website." Compl. ¶ 16. Accordingly, the Privacy Policy does not bind Plaintiff to the Terms. *See Allied Seed, LLC v. Norfarm Seeds, Inc.*, 2021 WL 1118035, at *2 (D. Minn. Mar. 24, 2021) ("A district court should not rewrite, modify, or limit the effect of a contract provision by a strained construction when the contractual provision is clear and unambiguous." (citing *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004))); *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346-47 (Minn. 2003) ("If a contract is unambiguous, the 'contract language must be given its plain and ordinary meaning.'" (citation omitted)).[5]

---

[5] Plaintiff applies Minnesota law on this issue because, "[w]hen a federal court decides a state law issue, it applies the choice-of-law rules of the jurisdiction in which it sits." *Herman v. Seaworld Parks & Entm't, Inc.*, 2016 WL 7447555, at *3 (M.D. Fla. Aug. 26, 2016) (citation omitted). The Terms contain a choice-of-law provision stating that California law will govern, Terms at 2, but the Court should "not apply it to the contract formation issue because '[a]pplying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established.'" *Herman*, at *3 n.2. Under Florida law, then, "the laws of the jurisdiction where the contract was executed governs." *Id.* Here, that means Minnesota law applies. *See id.* at *3 (Virginia law applies where plaintiff accessed defendant's website from Virginia). Regardless, the outcome would not change under Florida or California

A reasonably prudent consumer in Plaintiff's position would read this paragraph and conclude that it means what it says. By its plain terms, the Terms bind only purchasers and subscribers. Someone who, like Plaintiff, was merely visiting the Website would have no reason to think that the Terms apply to him, nor any reason to review the Terms. Accordingly, Plaintiff did not have constructive notice and cannot be compelled to arbitrate. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) ("[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate.").

**2. The Website Did Not Put Plaintiff On Notice**

Here, as in many other cases seeking to enforce arbitration agreements against consumers, "the arbitration agreement is only accessible to users by opening a weblink located at the bottom of the [webpage]." *Lopez*, 2025 WL 3458529, at *3 (citations omitted). In other words, it "is a browsewrap agreement because a user does not have to click a box indicating that they accept any terms in order to use the platform." *Id* at *4. A browsewrap agreement can be enforceable when a user "has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice." *Id.* (citation omitted). The issue of inquiry notice "turns on the clarity and conspicuousness of the terms which, for web-based contracts, are a function of the design and content of the relevant interface." *Id.* (citation omitted). In other words, "[t]he question is whether the hyperlink and notice . . . were so obvious that a reasonable internet user would notice it as something significant." *Jimenez v. Crumbl Franchising, LLC*, 2026 WL 1270013, at *3 (M.D. Fla. Mar. 18, 2026).

The link to the Terms appears twice at the bottom of the Dose homepage as follows:

---

law. *Abel Homes at Naranja Villas, LLC v. Hernandez*, 960 So.2d 891, 894 (Fla. 3d DCA 2007) ("Where contractual provisions are clear and unambiguous, the court must give those terms their plain and ordinary meaning."); *Powerine Oil Co., Inc. v. Superior Court*, 118 P.3d 589, 598 (Cal. 2005) ("'If contractual language is clear and explicit, it governs.'" (citation omitted)).




*Figure 1 - Dose,* DOSEDAILY.CO *(last visited May 26, 2026) (red circles added).*

The link appears twice in substantially similar format on other pages, including the bottom of the pages containing the Privacy Policy and Terms themselves. *See* Privacy Policy at 9; Terms at 18.

Here, the Terms appear in the same (small) font size at the bottom of the page and in the same bland color (white or light gray) as the other information nearby. In addition, there is no language clearly explaining when or to whom the Terms purport to apply. Accordingly, there is not sufficient notice. *See, e.g.*, *Jimenez*, 2026 WL 1270013, at *2 (no notice where "the terms and conditions are contained in a fairly long paragraph of relatively small font[,] most of the paragraph is in light gray[,] and 'Privacy Policy' and 'Terms and Conditions' are a slightly darker gray, but they are not a different color, bolded, underlined, in all capitals, or otherwise highlighted"); *Lopez*, 2025 WL 3458529, at *5 (no notice where "the link is located at the bottom of the page, in a small size and non-contrasting color (white) from the rest of the linked material on the page. . . . [and] there [was no] other text that directed [consumers] to read the terms contained in the link prior to investing or otherwise interacting with the platform"); *Tejon v. Zeus Networks, LLC*, 725 F. Supp. 3d 1351, 1356 (S.D. Fla. 2024) (no notice where "the hyperlinks and related text are both in light gray font, not blue, and the hyperlinks are underlined but not displayed in all capital letters" because "[m]erely underlining the hyperlinks, without more, does not provide sufficient contrast from the other gray font of identical size and capitalization . . . "); *NexGen Global*, 2023 WL 6213583, at *9 (no notice where hyperlink was "in the same font, [and] the same flavorless color (white)" as other text on the page); *Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp. 3d 1252, 1261-62 (S.D. Fla. 2021) (no notice because hyperlink at the bottom of the page was "in small

font, and the same size and color as the other hyperlinks" and was "not prominent or particularly remarkable").

### B. Defendant's Motion to Dismiss Should Be Denied

#### 1. Plaintiff Pleads a Violation of the Federal Wiretap Act

The Federal Wiretap Act requires a showing that Defendant (1) intentionally (2) intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device. 18 U.S.C. § 2511. Here, Plaintiff satisfies all of the statutory requirements.[6]

##### *a. Plaintiff Has Alleged Interception*

"Intercept" is "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). On this issue, a recent case from the District of Minnesota is illustrative:

> Plaintiffs have plausibly pled that an interception occurred. They allege that whenever they interacted with [defendant's] Websites, [defendant], through the Pixel imbedded in and run on the Websites, "contemporaneously and intentionally" redirected and disclosed the contents of Plaintiffs' electronic communications to third parties. . . . This is sufficient to allege interception . . . .

*In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 718 (D. Minn. 2023) (citing *United States v. Szymuszkiewicz*, 622 F.3d 701, 703-04 (7th Cir. 2010); *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 22 (1st Cir. 2003)). The same logic applies here, where Plaintiff alleges that "whenever [he] interacted with [Defendant's] Website[], [Defendant], through the Pixel[s] imbedded in and run on the Website[], 'contemporaneously and intentionally' redirected and disclosed the contents of Plaintiffs' electronic communications to third parties." *Id.*; *see* Compl. ¶¶ 234-35. *See also, e.g.*, Compl. ¶¶ 43-44, 54, 75, 78, 82, 117, 151, 163-64, 170-71, 214-16, 218.

##### *b. Plaintiff Has Alleged the Interception of Contents*

"[A] URL that discloses a 'search term or similar communication made by the user' can be considered a communication." *In re Grp. Health*, 709 F. Supp. 3d at 718 (citing *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1075-76 (N.D. Cal. 2023)). Where "[p]laintiffs allege that some of the . . . website's URLs include medical search terms" and that a "Pixel receives the

---

[6] In its motion, Defendant does not challenge the sufficiency of Plaintiff's allegations regarding the first (intentional), fourth (electronic communication), and fifth (using a device) elements. Accordingly, Plaintiff will address the second and third elements.

user's contact information and the URL" with those search terms, a plaintiff has "sufficiently pled that [the defendant] disclosed the 'contents' of these communications." *Vriezen v. Infinite Health Collaborative, P.A.*, 2025 WL 2992204, at *7 (D. Minn. Sept. 30, 2025). Here too, the very nature of Defendant's products means that search terms and other tracked data on the Website are health-related.[7]

Defendant claims that Plaintiff fails to meet his burden because he does not clarify "what mouse movements were captured" and "what keystrokes . . . he enter[ed]." Motion at 11. Such an argument asks Plaintiff to meet an impossible burden: it would not be reasonable to expect a consumer to track his "mouse movements," nor to plead which movements were tracked by technology he does not control. Indeed, Defendant is the one with access to these records, not Plaintiff. Accordingly, this argument fails. *See Speaker*, 623 F.3d at 1386 (plaintiff "need not prove his case on the pleadings—his [complaint] must merely provide enough factual material to raise . . . a plausible claim").

#### c. *The Party Defense Does Not Apply*

Defendant relies on the "party defense" under Federal Wiretap Act § 2511(2)(d) to argue that it qualifies as a party to the communications at issue. It does not.

*First*, the "party defense" shields only direct interceptors, not procurers. *Compare* 18 U.S.C. § 2511(1)(b) (applying to a person who "uses, endeavors to use, or procures any other person to use or endeavor to use"); *with* 18 U.S.C. § 2511(2)(d) (applying to a person who is a party to the communication and who "intercept[s]"). *See Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 925-26 (D. Minn. 2024) ("An interceptor and the procurer/user of an interception are conceptually and legally distinct" and "the statute's plain language appears to support the interpretation that the party exception was drafted with active interceptors foremost in mind");

---

[7] Defendant attempts to end-run this argument by asserting that "[i]f, for example, Plaintiff's search terms were '123456' or 'Robert Gulley,' neither could seriously be considered the purport or meaning of a real communication." Motion at 11. This argument asks the Court to engage in far-fetched hypotheticals while ignoring the plain allegations in the complaint: Defendant sells health-related products, and the communications its website invites with consumers relate to those products and the health concerns that may impact a person looking to use them. *See* Compl. ¶ 1; *see also* Dose, dosedaily.co (last visited May 26, 2026). Such an argument cannot justify dismissal at this stage. *See Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1380 (11th Cir. 2010) (pleading must only "raise a reasonable expectation that discovery will reveal evidence" to support the claim).

*see also Dawson v. Univ. of Phoenix, Inc.*, 2026 WL 92248, at *14 n.11 (N.D. Ill. Jan. 13, 2026) (questioning whether § 2511(2)(d) protects procurers, but declining to rule on issue because crime-tort exception applied); *Q.J. v. Powerschool Holdings, LLC*, 2025 WL 2410472, at *6 n.3 (N.D. Ill. Aug. 20, 2025) (same). Here, Plaintiff distinguishes Defendant's role as a procurer from that of direct interceptors (who, in this case, are the Tracking Entities). *See, e.g.*, Compl. ¶¶ 3-5, 8-9. Accordingly, the party defense does not apply.

*Second*, the crime-tort exception independently defeats any party defense. Defendant violated Plaintiff's privacy by procuring and installing the Tracking Tools for the purpose of disclosing his data (*see supra* at 1-3). *See Allison v. PHH Mortg.*, 2026 WL 899438, at *11 (N.D. Cal. Mar. 27, 2026) (allegations that defendant installed trackers on website to track customers' sensitive information to reduce the cost of marketing "allege[d] a purpose to invade privacy for [defendant's] profit, which triggers the crime-tort exception"); *Caldwell v. InMobi Pte Ltd.*, 2026 WL 1162828, at *4-5 (N.D. Cal. Apr. 29, 2026) (defendant intruded upon seclusion when using trackers to build individual profiles on plaintiff).

Defendant cites no authority to the contrary, instead arguing that Plaintiff failed to allege that it has engaged in criminal or tortious conduct (which is not true—*see infra* at 10-16). It also argues that its motivations related to advertising somehow protect it from the crime-tort exception. *See* Motion at 9-10. Authority is clear, however, that profit motivation does not prevent the application of the exception. *See, e.g.*, *Lugo v. Inova Health Care Serv.*, 2025 WL 905191, at *8 (E.D. Va. Mar. 25, 2025) ("[A] plaintiff who has alleged the defendant engaged in a statutory violation, even if for financial or commercial purpose, has stated a claim" because "[t]he mere existence of a lawful purpose alone does not sanitize an interception that was also made for an illegitimate purpose." (cleaned up) (quoting *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 378 (S.D.N.Y. 2024))); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025) ("The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose.").

At the very least, Defendant cannot deny that "[r]esolution of these claims . . . involves answering highly technical questions, including whether and to what extent the contents of the plaintiff's activities can be considered communications . . . ." *W.W. v. Orlando Health, Inc.*, 2025 WL 722892, at *6 (M.D. Fla. Mar. 6, 2025) (cleaned up) (quoting *D.S. v. Tallahassee Mem'l Healthcare*, 2024 WL 2318621, at *1 (N.D. Fla. May 22, 2024)). Accordingly, this Court should

"decline[] to make dispositive merits determinations" on these issues "on a motion to dismiss, where the Rule 8 bar is low." *Id.* (quoting *D.S.*, 2024 WL 2318621, at *1).

**2. Plaintiff Pleads a Violation of the Florida Security of Communications Act**

Defendant's motion to dismiss Plaintiff's claim under the Florida Security of Communications Act (the "FSCA") fails for three reasons.

*First,* Defendant's assertion that the FSCA cannot apply because Plaintiff was in Minnesota (*see* Motion at 13) is based on a flawed understanding of the technology at issue. As the complaint explains, the communications between Plaintiff and Defendant's website were bidirectional: each time Plaintiff loaded a webpage on the Website, a request was initiated from his computer, and a response was returned *to* his computer from the Website (which, of course, is operated by Defendant in Florida). *See* Compl. ¶¶ 17 (Defendant has its principal place of business in Florida), 25 ("When a visitor's browser navigates to a webpage, it sends an HTTP request to the server" [and,] "[i]f the server fulfills this request, it issues an HTTP response.").

Plaintiff alleges that certain tracking Pixel IDs were "included in transmissions sent to and from consumers' devices." Compl. ¶¶ 45-46; *see also id.* ¶¶ 100, 131, 155. The tracking Pixel ID allows the Tracking Entity to load Defendant's specific implementation of the Tracking Tools onto the user's browser. *See, e.g.*, *id.* ¶¶ 39-40 & n.18, 43-44, 71-72. Then, once active, the Tracking Tools have a list of events they monitor, including, for example, loading a new page, entering contact information, or inputting search terms. *See, e.g.*, *id.* ¶¶ 47-49, 75-76, 113-14, 128-29, 151. In so monitoring, the Tracking Tools gather the detailed URLs that Defendant's Website sends to the user as responses to the user's inputs. Those URLs can include the webpage's location and path, search terms, product names, or user email addresses. *See, e.g.*, *id.* ¶¶ 96, 115-16, 141, 153. In other words, each time Plaintiff clicks a button, he sends a request *to* the Website to load a page; the response back *from* the Website allows the page to load (and, importantly, includes detailed information about Plaintiff's action and the page being loaded).

The Tracking Tools, then, intercepted Plaintiff's communications with the Website in both directions, including transmissions that originated in Florida and traveled to Plaintiff's computer in Minnesota. *See id.* ¶ 37 ("Unbeknownst to users, as they browse and use the Website, the Tracking Tools capture and record *both incoming and outgoing requests*." (emphasis added)). The incoming transmissions—those that originated in Florida—form the basis of Plaintiff's FSCA claim. *See Cohen Bros., LLC v. ME Corp., S.A.*, 872 So.2d 321, 324 (Fla. 3d DCA 2004) ("To

establish a claim under the [FSCA], the persons bringing suit must be Florida residents *or* the improper 'interception' must have occurred in Florida. . . . [A]n 'interception' occurs 'where the words or the communication is uttered, not where it is recorded or heard.'" (citations omitted)).

*Second*, Defendant is incorrect that the FSCA does not apply to the technology at issue here. *See* Mot. at 13-15. In particular, it argues that the technology Plaintiff describes falls into the statute's carve-out for "[a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object." Fla. Stat. § 934.02(12)(c). In support of this position, it relies on *Jacome v. Spirit Airlines, Inc.*, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021), and related cases, which held that "session replay technology"—a form of "commonplace analytics software" that "*tracks* a website browser's movements" falls into this carve-out. *Id.* at *3; *see also Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1319 (S.D. Fla. 2021) (granting motion to dismiss FSCA claim based on use of session replay technology). But unlike session replay technology, the technology Plaintiff attacks here does not merely "track . . . movements." Instead, as discussed *supra* at 1-3, 10-11, it allows for the interception of information contained in transmissions between Plaintiff and the Website.

The Middle District of Florida recently considered this argument and rejected it. *See Orlando Health*, 2025 WL 722892. In *Orlando Health*, the court determined that the defendant's use of Pixel tracking software came within the ambit of the FSCA. *Id.* at *1, *3-4. The court rejected the analogy to *Jacome* and the other session replay technology cases because "Plaintiff's claims are predicated on the tracking tools' interception of her communications . . . , not on the simple fact that her movements on Defendants' website were tracked." *Id.* at *3. Moreover, the court continued, "[o]ther district courts considering factually closer cases . . . have reached the opposite conclusion [from] the *Jacome* court." *Id.* at *4 (citing *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *5-7 (N.D. Ill. Sept. 9, 2024); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 885, 903 (C.D. Cal. 2024); *In re Grp. Health*, 709 F. Supp. 3d at 712, 720; *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *9 (W.D. Wash. Dec. 19, 2023)). That same logic applies here.

*Third*, Plaintiff's FSCA claim succeeds for the same reasons as his Federal Wiretap Act claim, *see supra* at 7-10. *See also Orlando Health*, 2025 WL 722892, at *3 ("Florida courts construe the FSCA's provisions in accord with . . . analogous provisions of the Wiretap Act.").

### 3. Plaintiff States a Claim for Intrusion

"[T]he Florida Supreme Court defines intrusion as 'physically or electronically intruding into one's private quarters,' and has specified that 'the intrusion to which this refers is into a "place" in which there is a reasonable expectation of privacy.'" *Neeley v. Wells Fargo Financial, Inc.*, 2012 WL 5949106, at *4 (M.D. Fla. Nov. 28, 2012) (quoting *Allstate Ins. Co. v. Ginsberg*, 863 So.2d 156, 162 (Fla. 2003)). "'[T]he intrusion must be highly offensive to a reasonable person" and the "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* at *5. The majority of cases to consider the issue have found that a computer or electronic location meets the "place" requirement. *See, e.g.*, *Hall v. Sargeant*, 2020 WL 1536435, at *32-34 (S.D. Fla. Mar. 30, 2020) (access to emails can constitute "electronic intrusion"); *Stirling Int'l Realty, Inc. v. Soderstrom*, 2015 WL 403318, at *6 (M.D. Fla. Jan. 28, 2015) ("unauthorized access to [plaintiff's] email account and subsequent forwarding of said emails" sufficient to state claim for intrusion). *See also Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 969 (11th Cir. 2016) (recognizing that individuals have a privacy interest in their personal emails). These holdings are in line with the reasoning of courts addressing analogous claims nationwide. *See, e.g.*, *Walsh v. Dollar Tree Stores*, 2025 WL 2939229, at *14 (N.D. Cal. 2025) ("[P]laintiffs have a reasonable expectation of privacy where data is collected without their consent." (citations omitted)); *Hovanec v. Miller*, 2018 WL 1221486, at *10 (W.D. Tex. Mar. 7, 2018) (accessing "private information contained in [a person's] iCloud . . . could plausibly state a claim" (citations omitted)). That logic applies here, where Plaintiff alleges that Defendant enabled the Tracking Entities to place Tracking Tools on *his own computer*. *See, e.g.*, Compl. ¶¶ 2, 55, 79, 136, 153(c), 161, 253.

Defendant cites no persuasive authority to the contrary. In *Hammer v. Sorenson*, 824 F. App'x 689 (11th Cir. Aug. 11, 2020), the plaintiff's claim for intrusion was based on "two emails" the defendant sent "to the email address [plaintiff] publicly lists in association with her lobbying activities." *Id.* at 696. The court appropriately found that this did not constitute an intrusion into a private place because the email address in question was "publicly listed on the website for the Florida Association of Professional Lobbyists" and the plaintiff had "alleged no reason for [defendant] to have expected that this professional email address would have been associated with private quarters." *Id.* Not so here, where Defendant's website aimed to attract consumers seeking health-related products (and so it had every reason to expect that consumers would access its site

and communicate with it from their personal devices). Similarly, *Grayson v. Ubl*, 2024 Fla. Cir. LEXIS 3368 (Fla. Cir. Ct. Aug. 7, 2024), related to the defendant's comments in "the comment section of online articles during [the plaintiff's] campaign for Congress" and a public "allegedly doctored YouTube video that contains audio of a purported argument between [the defendant] and his then wife." *Id.* at *1-2, *7-8. There, plaintiff's allegations related to publicly available statements, and so the court rejected his intrusion upon seclusion claim. *Id.* at *16-17. The baby monitor quote Defendant relies on (Motion at 16) is mere dicta, *see Grayson*, 2024 Fla. Cir. LEXIS 3368, at *17; in any event, Plaintiff's claim is in accord with this example because he alleges Defendant intruded on his personal web browser, on his personal computer, to obtain private information. *See, e.g.*, Compl. ¶¶ 2, 55, 79, 136, 153(c), 161, 253.

Finally, the intercepted content here is objectionable because it relates to Plaintiff's health information. It is independently objectionable because the volume of data transmitted to third parties creates an aggregate dossier of personal information on each consumer. *See, e.g.*, *In re: Meta Android Priv. Litig.*, --- F. Supp. 3d ---, 2026 WL 1279416, at *6 (N.D. Cal. May 11, 2026) (sustaining intrusion claim "considering 'the amount of data collected, the sensitivity of data collected, the manner of data collection, and the defendant's representations to its customers'"); *In re Meta Pixel Healthcare Litig.*, 713 F. Supp. 3d 650, 655, 657 (N.D. Cal. Jan. 29, 2024) (sustaining intrusion claim where a Pixel "records and transmits" identifiable user communications to Meta, which combines them with the user's existing Facebook profile); *Walgreen Co.*, 733 F. Supp. 3d at 893-94 (information is objectionable where it "reveal[s] personal medical information").[8]

**4. Plaintiff States a Claim for Common Law Fraud, Deceit, and/or Misrepresentation**

Plaintiff states a straightforward claim for common law fraud: Defendant knowingly misrepresented what data it would track and what would happen with that data, Plaintiff relied on those misrepresentations when using the Website, and Defendant received benefits as a result. *Supra* at 1-3; *see Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010) (stating elements of fraud claim).

[8] The *Orlando Health* court found that the use of similar technology could not provide the basis for an intrusion claim, but it did not consider the *aggregation* of data at issue in Pixel-tracking cases. *See* 2025 WL 722892, at *10.

The complaint identifies specific false statements of material fact with the particularity FRCP 9(b)[9] requires, including allegations that:

- The Privacy Policy represents that a cookie "identifies the customer's computer, but not the customer." Compl. ¶ 2. In reality, the Facebook *c_user* cookie contains the user's Facebook ID, a unique numeric identifier that, when appended to facebook.com/, "redirects the webpage straight to the Facebook profile associated with the [Facebook] ID." *Id.* ¶¶ 79-81; *see also* Figs. 14-15. Similarly, the TikTok Pixel captures users' email addresses on login, enabling it to track and identify individual users. *Id.* ¶ 63; Fig. 13.

- The Privacy Policy represents that "Third Parties cannot do anything with customer's personal information unless Dose has instructed Third Parties to do so," Compl. ¶ 7, but the Meta Business Tools Terms, TikTok Business Products (Data) Terms, Reddit Business Tool Terms, Snap Personal Data Terms, and Twitter each expressly authorize the platforms to process the data they receive for commercial purposes. *Id.* ¶¶ 8, 58-59, 66, 85, 89-90, 137-38, 157.

- The Privacy Policy represents that "Dose will not use your personal identifiable information for any purpose other than that for which it is submitted." Compl. ¶ 175. In fact, users submit their email addresses to log into the Website, and Defendant then transmits those email addresses to TikTok for unrelated analytics and marketing purposes. *Id.* ¶ 176; Fig. 13.

The complaint also alleges knowledge of falsity and intent to defraud. These allegations include that Defendant: knowingly deployed and configured Tracking Tools (Compl. ¶¶ 38, 71-74, 113-14, 130, 146-50), embedded Pixel IDs that route data to its commercial accounts (*id.* ¶¶ 46, 73, 83, 99-100, 131, 155), and selected the events the Tracking Tools would transmit (*id.* ¶¶ 40, 47-48, 82, 115-16). The Tracking Entities' terms placed Defendant on notice that the Tracking Tools would share user data. *Id.* ¶¶ 67, 91-93, 123, 142-43, 168. Defendant entered those agreements and proceeded to make contrary representations to its users; in short, it made misrepresentations "with the intent to induce reliance . . . by reassuring [users] that their personally identifiable information would not be disclosed . . . , [while] continu[ing] to collect and transmit personally identifiable information for its own commercial benefit." *Id.* ¶ 267.

---

[9] FRCP 9(b) requires the plaintiff to identify the precise statements made, who made them, when and where they were made, the content rendering them false, and what the defendant obtained as a consequence. *See Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1178 (11th Cir. 2025).

In addition, Plaintiff "relied on Defendant's misrepresentations by continuing to use the Website." Compl. ¶ 268.[10] Plaintiff also alleges loss of privacy, loss of control over sensitive information, and diminution in the value of his personal data, and that Defendant benefited by "continuing to collect, use, and monetize users' data." *Id.* ¶¶ 270-71. Such allegations are sufficient. *See In re Brinker Data Incident Litig.*, 2020 WL 691848, at *7-8 (M.D. Fla. Jan. 27, 2020) (personal information has economic value and its unauthorized disclosure is a cognizable injury).

Finally, the economic loss rule does not apply here. *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So.3d 399, 407 (Fla. 2013) ("[T]he application of the economic loss rule is limited to products liability cases."); *see also Cafaro v. Zois*, 2015 WL 3821752, at *17 (S.D. Fla. June 2, 2015) ("[W]hat remains of the economic loss rule does not bar [plaintiff's] claim for fraud."); *Continent Aircraft Trust 1087 v. Diamond Aircraft Indus., Inc.*, 2013 WL 2285539, at *5 (S.D. Fla. May 23, 2013) (denying motion to dismiss fraud claim under economic loss rule post-*Tiara*). Defendant does not cite *Tiara*—or any cases post-dating *Tiara*—and cannot avoid the straightforward application of its rule here. Accordingly, dismissal is not warranted.

**5. Plaintiff States a Claim for Unjust Enrichment**

Defendant's sole attack on Plaintiff's unjust enrichment claim—that any benefit was conferred only "indirectly"—is unsupported by the complaint's allegations and Florida law. Plaintiff alleges that Defendant's commercial advantage—improved advertising performance, custom audiences, lookalike modeling, and reduced ad costs—accrued to Defendant as a direct result of Plaintiff's interactions with the Website. Compl. ¶¶ 53, 76-77, 109-11, 158-62, 275. Such allegations are sufficient. *See Williams v. Wells Fargo Bank N.A.*, 2011 WL 4368980, at *9 (S.D.

---

[10] Plaintiff need not allege the precise time he viewed the Privacy Policy because he alleged (1) that he viewed the Website in March of 2025, (2) that Defendant maintained the Privacy Policy on the Website, and (3) that he relied on that policy in continuing to use the Website. *See* Compl. ¶¶ 9, 16. Accordingly, the relevant "when" is sometime between Defendant posting the Privacy Policy with the relevant misrepresentations (according to Defendant, "since at least June 11, 2024," *see* Pizzitola Decl. ¶ 4) and March 2025, when Plaintiff last relied on that Privacy Policy. Such allegations are sufficient under Rule 9(b). *See, e.g.*, *West Resort, S.A. v. Twin Vee Catamarans, Inc.*, 2018 WL 11656387, at *4 (S.D. Fla. Jan. 23, 2018) ("when" sufficiently alleged as "the several month period prior to April 28, 2016 . . . through June 15, 2017"); *Secs. & Exch. Comm'n v. Perez*, 2011 WL 13220451, at *5 (S.D. Fla. Mar. 18, 2011) ("when" sufficiently described as "between 2006 and June 2009").

Fla. Sept. 19, 2011) ("[J]ust because the benefit conferred by Plaintiffs on Defendants did not pass directly from Plaintiffs to Defendants—but instead passed through a third party—does not preclude an unjust-enrichment claim.").

**6. The Court Has Subject Matter Jurisdiction**

*First*, this Court has federal question jurisdiction based on Plaintiff's Federal Wiretap Act claim, which should not be dismissed, *see supra* at 7-10. 28 U.S.C. § 1331. Section 1367(a) in turn supplies supplemental jurisdiction over the remainder of Plaintiff's claims, each of which arises from the same website-tracking conduct and so forms part of the same case or controversy.

*Second*, Plaintiff has adequately alleged damages. For jurisdictional purposes, "[a] plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003); *see also Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) ("the plaintiff's amount-in-controversy allegation is accepted if made in good faith." (citation omitted)). Here, the Federal Wiretap Act authorizes damages of the greater of $100 per day of violation or $10,000 per plaintiff. 18 U.S.C. § 2520(c)(2)(B). On this basis alone, the class need only exceed 500 members to clear $5,000,000. The FSCA provides for liquidated damages of "$100 a day for each day of violation or $1,000, whichever is higher." Fla. Stat. § 934.10. 5,001 class members, then, would independently satisfy the threshold. For any class member who visited the Website on multiple days while the trackers ran, moreover, "each day of violation" compounds both statutory measures.

In addition, the complaint defines the class to include "[a]ll persons in the United States who visited the Website that had their Sensitive Information improperly disclosed to Tracking Entities through the use of the Tracking Tools." Compl. ¶ 186. Elsewhere, the complaint alleges that *all* visitors to the website are subject to the Tracking Tools "immediately upon [their] initial visit to the Website." *Id.* ¶ 3. And Figure 11 of the complaint (at p. 24), Defendant's product page, displays 8,478 reviews on a single product ("Dose for your Liver"). Reviewers are a small fraction of purchasers, and purchasers are a small fraction of visitors. The 500-member and 5,001-member thresholds, then, are not close questions. Accordingly, Plaintiff has adequately alleged damages by "claiming a sufficient sum in good faith." *See Federated Mut. Ins.*, 329 F.3d at 807.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to compel arbitration and/or dismiss the complaint. Alternatively, Plaintiff seeks leave to amend the complaint to rectify any deficiencies in pleading.

Dated: May 26, 2026

Respectfully submitted,

By: */s/ Tonyia J. Johnson*
Tonyia J. Johnson
Florida Bar No. 1058251
**SHAMIS & GENTILE, P.A.**
14 Ne 1st Avenue, Suite 705
Telephone: (305) 479-2299 Email:
tjohnson@shamisgentile.com

Mark S. Reich*
Email: mreich@zlk.com
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive such service.

*/s/ Tonyia J. Johnson*
Tonyia J. Johnson