UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:26-cv-21113-KMM-MFE

ROBERT GULLEY, on behalf of himself and all others similarly situated,

Plaintiff,

v.

EETHO BRANDS INC, d/b/a DOSE,

Defendant.
_______________________________________/

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION TO COMPEL ARBITRATION AND/OR DISMISS**

Defendant Eetho Brands Inc. d/b/a Dose ("**Dose**" or "**Defendant**") submits the following reply in support of its motion to dismiss (the "**Motion**") the putative Class Action Complaint (ECF No.1; "**Complaint**") filed by Plaintiff Robert Gulley (**"Plaintiff**").

## I. INTRODUCTION

Plaintiff attempts to invoke the protections of Defendant's Privacy Policy to form the basis of one or more of his privacy claims while simultaneously asking the Court to ignore the Privacy Policy's express incorporation of the Terms and Conditions, inclusive of its arbitration agreement. Because Plaintiff relies upon the protection and definitions found within the Privacy Policy, however, he is equitably estopped from attempting to repudiate the Privacy Policy to avoiding arbitration.

Furthermore, Plaintiff's opposition does nothing to demonstrate that his substantive claims do not otherwise fail as a matter of law or that he has sufficiently established the requisite jurisdictional amounts under the Class Action Fairness Act. Accordingly, the Court should compel arbitration or, in the alternative, dismiss the complaint in its entirety.

## II. <u>Plaintiff is Bound by the Terms of the Arbitration Agreement</u>

To avoid the arbitration agreement, Plaintiff focuses almost exclusively on the relative conspicuousness of the Terms and Conditions hyperlink on the Website's homepage. Plaintiff's analysis concerning browsewrap agreements is irrelevant, however, because he is not bound by the arbitration agreement because of the conspicuousness of the hyperlink, but rather bound through the doctrine of direct benefits estoppel.

"Direct benefits estoppel applies when a nonsignatory 'knowingly exploits the agreement containing the arbitration clause" but then "during litigation, attempts to repudiate the arbitration clause in the contract." *TD Holdings, Inc. v. IFC Opportunity Fund, LLC*, 2021 U.S. Dist. LEXIS 128724 (M.D. Fla. 2021) (internal citation and quotation marks omitted). Plaintiff's conduct is exactly what the doctrine forbids - reaping the benefits of one portion of the contract while attempting to evade the mandatory arbitration requirement. Plaintiff explicitly alleges reliance on the representations contained in the Privacy Policy when deciding to continue using the Website (Compl. ¶ 268) – an allegation central to Count IV. Having availed himself of the Privacy Policy's benefits, Plaintiff cannot selectively disclaim the arbitration agreement that the Privacy Policy expressly incorporates.

Plaintiff further contends that he is not bound because he did not complete a purchase or subscribe to Dose's services. This is legally incorrect and a misreading of the agreement. The language stating that "[b]y entering into a purchase order and/or to subscribing to Dose's services, you hereby deemed acceptance of Dose practices described in this policy statement" does not create the exclusive means of acceptance; it merely identifies a subset of users who are automatically bound. More importantly, the subsequent clause mandates that any privacy-related dispute is subject to the provisions of the Privacy Policy and Terms and Conditions, which include the arbitration agreement. And because Plaintiff relies on the "customer" terminology of that clause to support Count IV (Opp. p. 15), he is equitably estopped from avoiding being bound by the Privacy Policy's other terms.

Ultimately, Plaintiff's privacy claims are built on the foundation of the Privacy Policy. Because that same policy dictates that privacy disputes are subject to the Terms and Conditions (which contain a valid, enforceable arbitration agreement), Plaintiff is bound. His claims must be compelled to arbitration accordingly.

### III. Plaintiff's ECPA Claim Fails as a Matter of Law

#### A. The Party Defense Applies

Plaintiff cites three non-binding, out-of-circuit cases to argue that the Wiretap Act's party defense is unavailable to alleged "procurers." None support his position, however.

For example, in *Mekhail v. N. Mem'l Health Care*, 726 F.Supp.3d 916, 927 (D. Minn. 2024), the Court stated that "the Court will assume without deciding that the party exception presumptively applies to *any* violation of ECPA, whether a party to a communication is accused of directly intercepting that communication or whether they are accused of procuring/using an interceptor of that communication. . . the assumption is generally consistent with persuasive ECPA case law concerning the 'presumptive non-liability of parties.'" (*citing In re Grp. Health Plan Litig*, 2023 U.S. Dist. LEXIS 227218, at *7 (D. Minn. Dec. 21, 2023). The ultimate decision reached by *Mekhail*, as well the Courts in each of the other two cases cited by Plaintiff, was that the plaintiff had sufficiently invoked the crime-tort exception to party non-liability, something Gulley fails to do.

Moreover, Plaintiff's "procurer" theory also fails as a matter of statutory interpretation. First, Dose notes that Plaintiff invokes a provision which only concerns the interception of *oral communication* in support of the position that the party-defense does not apply to his claims. (Opp. at p. 9, citing 18 USC § 2511(b)). Nevertheless, because Plaintiff's right of action derives from 18 U.S.C. § 2520(a)(1) and because § 2520(a)(1) makes plain that procurers are not subject to civil liability, his argument fails regardless.

Specifically, 18 U.S.C. § 2520(a)(1) provides that "[e]xcept as provided in section 2511(2)(a)(ii) . . ., any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter . . . .may in a civil action recovery from the person or entity . . . which engaged in that violation such relief as may be appropriate." Prior to the 1986 amendments to the ECPA, § 2520(a) read "Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person."

No longer does the statute authorize a civil cause of action for "procurement" – that is the sole province of the criminal proscriptions in § 2511(a). Civil liability may now only be imposed against "the person or entity which *engaged in that violation*," with "violation" being limited by section 2520(a) to "intercepted, disclosed, or intentionally used." *See Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168-69 (5th Cir. 2000) (Section 2520's plain and unambiguous language does not provide for a civil action against those that merely procure interception by another). Courts in the Eleventh Circuit have adopted this interpretation of the Wiretap Act. *See, e.g., Perkins-Carillo v. Systemax, Inc.*, 2006 U.S. Dist. LEXIS 39894 (N.D. Ga. May 26, 2006); *DIRECTV, Inc. v. Baker,* 318 F.Supp.2d 1113, 1117 (M.D. Ala. 2004); *see also Directv, Inc. v. Hutchinson*, 2003 U.S. Dist. LEXIS 26042, at *11 (M.D. Fla. 2003) ("To maintain a cause of action under § 2520, DIRECTV must allege that the Defendants intercepted, disclosed, or intentionally used DIRECTV's satellite television programming in violation of [the Wiretap Act].").

The 1986 amendment meaningfully narrowed the conduct subjecting persons to civil liability under § 2520(a), limiting those against which a civil action lies to persons who intercept, disclose, or use electronic communications. Consequently, Plaintiff's "procurer" theory of civil liability against Dose is incorrect as a matter of law.

### B. The Crime-Tort Exception Does Not Apply

Without a "procurer" theory to salvage his Wiretap Act claim, Plaintiff must rely on § 2511(d)'s crime-tort exception to the party defense. As Dose demonstrated in its moving papers, however, the Complaint fails to sufficiently invoke it.

§ 2511(d) provides that "[i]t shall not be unlawful under this chapter . . . for a person . . . to intercept a . . . electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." Contrary to Plaintiff's statement, Defendant does not claim that § 2511(d) require a tortious purpose in the abstract. Rather, consistent with § 2511(d), Dose maintains that Plaintiff must plead "sufficient facts to support an inference that the offender intercepted the communication for [an unlawful] act that is *independent* of the intentional act of recording or interception itself." *Nichols v. PeaceHealth Networks on Demand LLC*, 2026 U.S. Dist. LEXIS 44540, at 7 (W.D. Wash. Mar. 4, 2026) (*quoting B.K. v. Eisenhower Med. Ctr.*, 2024 U.S. Dist. LEXIS 67497, at *3-4 (C.D. Cal. Apr. 11 2024)).

Plaintiff creates a strawman by arguing that Dose suggests a financial motive inoculates a tortious purpose. This misframes the analysis: the crime-tort exception requires that the interception be done to commit a separate criminal or tortious act. And neither advertising, analytics, nor marketing are inherently criminal or tortious acts.

The cases cited by Plaintiff do not dictate a different conclusion. In *Lugo v. Inova Health Care Servs.*, 2025 U.S. Dist. LEXIS 55590, at *18 (E.D. Va. Mar. 25, 2025), the court applied the exception because the plaintiff alleged the interception facilitated a criminal violation of HIPAA. Similarly, in *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F.Supp.3d 369 (S.D.N.Y. 2024), also involving HIPAA, the Court emphasized that the defendant must have a criminal or tortious purpose "independent of the

act of recording itself" *Id.* at 378 (*quoting Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) ("If, at the moment he hits 'record,' the offender does not intend to use the recording for criminal or tortious purposes, there is no violation.").

Moreover, the few courts in *this* Circuit to have addressed this specific issue require allegations of a separate tortious/criminal act independent of the interception itself to justify invoking the exception. *See, e.g., Cobbs v. Petmed Express, Inc.*, 2026 U.S. Dist. LEXIS 74228, at *16 (S.D. Fla. Jan. 14, 2026) (applying exception where defendant intercepted communications to violate state veterinary confidentiality laws); *Doe v. Wellstar Health Sys, Inc.*, 799 F.Supp.3d 1268 (N.D. Ga. Aug. 21, 2025) (applying exception where defendant violated HIPAA); *T.D. v. Piedmont Healthcare, Inc.*, 2024 U.S. Dist. LEXIS 236438 (N.D. Ga. Dec. 10, 2024) (holding that failure to plead a tortious/criminal use separate from the recording itself precludes the crime-tort exception).

Dose demonstrated that because the Complaint's allegations at paragraphs 77 and 214 plead that Defendant's purpose in allegedly intercepting Plaintiff's communications with the Website was the profit-driven act of advertising, the Complaint failed to plead the existence of the crime-tort exception. The Wiretap Act claim must be dismissed accordingly.

## IV. Plaintiff's FSCA Claim Fails as a Matter of Law

Plaintiff's attempt to manufacture standing under the FSCA by reframing his communications as "bi-directional" is baseless. Florida law is clear - an interception occurs where the communication originates not where it is recorded. Even if this "bi-directional" theory were accepted, it would be an admission that the intercepted communication was Dose's, not the Plaintiff's.

By shifting focus to communications originating in Florida, Plaintiff effectively concedes that his own communications originated in Minnesota, thereby confirming his lack of statutory standing. Section 934.10 provides a right of action only to a person whose "wire, oral, or electronic

communication is intercepted". If the only communication originating from Florida was Dose's, then Plaintiff has no standing to pursue his FSCA.

Furthermore, Plaintiff elevates form over substance by disputing the nature of the technology. While the Complaint avoids the term "session replay," its technical description mirrors the "Session Replay Code" that courts consistently find falls outside FSCA's scope. *See, e.g., Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 61 (W.D. Pa. 2023) ("Session Replay Code allows website operators to record, save, and replay website visitor's interactions with a website, including 'all mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, and numerous other forms of a user's navigation and interaction through a website."); *Tanner v. Acushnet Co.*, 2023 U.S. Dist. LEXIS 208894, at *3 (C.D. Cal. Nov. 20, 2023) ("The Session Replay Code enables website operators and the third-party providers of the technology to record, save, and replay users' interactions with the website. . . The code captures interactions at a granular level, including all of the user's mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, and other navigations through the website."). Whether labeled a cookie, pixel, or otherwise, the functionality described in the Complaint is identical to the technology Florida courts have determined is not subject to the FSCA.

Accordingly, the FSCA claim must be dismissed.

## V. <u>Plaintiff's Common Law Claim Fail as a Matter of Law</u>

### A. Plaintiff Does Not Plead an Intrusion Upon Seclusion

Plaintiff fails to satisfy the "private place" requirement for an intrusion claim under Florida law. Florida courts consistently hold that an intrusion must be into one's "private quarters," and digital internet activity does not constitute such an intrusion. He seemingly ignores *W.W. v. Orlando Heath, Inc.*, 2025 U.S. Dist. LEXIS 40038 (M.D. Fla. Mar. 2025) and *Allstate Ins. Co. v. Ginsburg,* 863 So.3d 156 (Fla. 2003) in claiming that Dose cites to no authority in support of that conclusion. He also seemingly confuses the concept that while an intrusion can be done electronically, it still must be into

one's private quarters. *Ginsburg,* 863 So.3d at 162; *see also Rebalko v. City of Coral Springs*, 552 F.Supp.3d 1285, 1332 (S.D. Fla. 2020) ("An intrusion claim has three elements. First, there must be a private quarter. Second, there must be some physical or electronic intrusion into that private quarter. Third, the intrusion must be highly offensive to a reasonable person.").

Plaintiff ignores the "private quarters" element required by Florida law, and instead cites inapplicable email cases and out-of-state cases which did not apply Florida common law. However, as *W.W. v. Orlando Health, Inc.*, confirms, Florida law does not recognize an intrusion upon seclusion claim based on the type of internet activity alleged here. There, the Court expressly rejected the argument that defendant "had intruded into her private quarters because its tracking tools intruded into her browser 'conversations with [her] healthcare providers.'" *W.W.*, 2025 U.S. Dist. LEXIS at *29. While noting the absence of any authority "demonstrating that such internet activity constitutes an intrusion into one's private quarters under Florida law," it highlighted the myriad cases which indicate the contrary, including *Watts v. City of Hollywood,* 146 F.Supp.3d 1254, 1267-68 (S.D. Fla. 2015) ("The [defendant]'s accessing of [the plaintiff]'s driver's license information in the [Drive and Vehicle Information Database (DAVID)] system is likewise not an intrusion into a 'place.' . . . [the plaintiff]'s argument 'her privacy was invaded electronically, and included the private information about her physical domains of home and vehicle,' . . . is not supported by a single citation to legal authority.").

Plaintiff's abject failure to satisfy the "private place" element was the reason Dose did not analyze the "highly objectionable" element of the tort. Dose did not concede the element – not least of which because this Court recently confirmed that standard website tracking does not reach the level of outrageousness required to exceed "all possible bounds of decency". *See Cobbs v. Petmed Express, Inc.*, 2026 U.S. Dist .LEXIS 74228, at *26 (S.D. Fla. Jan. 14, 2026) ("More generally, the conduct at issue here [i.e. website tracking technology] is not "so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency.") (*quoting Stoddard v. Wohlfahrt*, 573 So.2d 1060, 1062 (Fla. Dist. Ct. App. 1991).

**B. Plaintiff's Fraud, Deceit, Misrepresentation Claim is Precluded**

Plaintiff incorrectly asserts that the economic loss rule applies only to products liability claims. Whether labeled the economic loss or independent tort rule, , the doctrine "provides generally that tort actions cannot be asserted by parties in contractual privity unless the actions sound in a tort independent from the breach of contract." *Fincantieri Marine Repair, LLC v. Favor Steel & Fabrication, Inc.*, 2026 U.S. Dist. LEXIS 69880, at * 9 (M.D. Fla. Mar. 31, 2026).

Plaintiff's repeated allegations that Dose's data collection violated the Privacy Policy (which he claims to have relied upon) are a complaint regarding contractual performance. It is not an independent claim of fraud, deceit, or misrepresentation. The economic loss rule independent tort rule thus precludes Count IV.

**C. Plaintiff Does Not Plead An Unjust Enrichment**

Plaintiff attempts to rescue his unjust enrichment claim by conflating a benefit that allegedly "accrued" to Dose with one purportedly "conferred" by the Plaintiff. Florida law, however, requires that the benefit be conferred directly upon the defendant by the plaintiff. Plaintiff's reliance on *Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 105513 (S.D. Fla. Sept. 19 2011) is misplaced. That case held only that direct contact is unnecessary if the benefit flows directly to the defendant, such as the kickbacks taken from the plaintiff's own insurance premiums at issue in that case.

Here, the Complaint alleges that any data was transferred to third parties who then monetized it, providing only a derivative or subsequent benefit to Dose. Because any benefit was conferred upon third parties rather than directly upon the Defendant, the claim is insufficient as a matter of law.

## VI. Subject Matter Jurisdiction Deficiencies Doom the State Law Claims

Plaintiff's jurisdictional allegations fail to satisfy the requirements of the CAFA. Although the Complaint relies on the Wiretap Act for original jurisdiction, it lacks any invocation of 28 U.S.C. § 1367(a) for supplemental jurisdiction over the state law claims, leaving CAFA as the only potential predicate. Plaintiff, however, merely recites the statutory threshold without providing a factual basis, which is insufficient to carry his burden of proving jurisdiction by a preponderance of the evidence.

Plaintiff argues that he has satisfied the pleading requirements by claiming a sum in good faith. But he has done nothing of the sort; he has merely recited verbatim the threshold statutory requirements of CAFA. When a complaint offers only conclusory allegations regarding the jurisdictional amount, the plaintiff must provide evidence to support that claim. See *Doane v. Tele Circuit Network Corp.*, 852 Fed. Appx. 404, 407 (11th Cir. 2021); *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335 (11th Cir. 2018). Plaintiff's attempt to do so is fatally flawed.

First, he purports to rely on the number of product reviews to estimate class size, but this does not prove either that 5,001 Florida residents are members of the class or that 5,001 persons communicated with the Website from Florida, either of which is required for statutory standing to pursue a FSCA claim. Moreover, while FSCA provides for a fixed measure of liquidated damages, Plaintiff's common law claims require actual damages, which he has failed to specify.

Once the Wiretap Act and FSCA claims are dismissed, Plaintiff fails to establish any basis for jurisdiction over the remaining state law claims. Consequently, the Court must dismiss those claims for lack of subject matter jurisdiction.

## VII. CONCLUSION

For the foregoing reasons, as well as those set forth in Dose's moving papers, Dose respectfully requests that the Court grant its Motion and compel arbitration or, in the alternative, dismiss the Complaint in its entirety.

Dated: June 2, 2026

**KLEIN MOYNIHAN TURCO LLP**

*Attorneys for Eetho Brands Inc. d/b/a Dose*

By: /s/ Neil E. Asnen
Neil E. Asnen (admitted *pro hac vice*)
450 Seventh Avenue, 40th Floor
New York, NY 10123
T: (212) 246 – 0900
nasnen@kleinmoynihan.com

-and-

**SONN LAW GROUP PA**

Jeffrey R. Sonn
Bar ID #: 773514
jsonn@sonnlaw.com
19495 Biscayne Blvd Ste 607
Aventura, FL 33180
(305) 912-3000

**CERTIFICATE OF SERVICE**

I certify a true and correct copy of the foregoing was served upon all counsel of record via CM/ECF on the 2nd Day of June, 2026.

/s/ *Jeffrey R. Sonn*
Jeffrey R. Sonn